8 F.3d 822
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Olimpia NUNEZ, Defendant-Appellant.
 No. 92-5180.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: February 16, 1993.
Decided: October 19, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CR-91-290-S)
 R. Kenneth Mundy, Mundy, Holt & Mance, Washington, D.C., for Appellant.
 Richard D. Bennett, United States Attorney, John F. Purcell, Jr., Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before WIDENER, PHILLIPS, and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Olimpia Nunez appeals her conviction of conspiracy to distribute cocaine, in violation of 18 U.S.C. § 846 (1988), and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988). She claims that tapes of conversations should not have been introduced into evidence, that venue in the District of Maryland was improper as to the distribution count, and that there was insufficient evidence to sustain her conspiracy conviction. Finding these contentions to be without merit, we affirm the conviction.
 
 I.
 
 2
 In early 1991, Cecil McKenzie and his cocaine supplier, Deneise Lackonsingh, were arrested on drug charges. Lackonsingh agreed to cooperate with the FBI, which hoped to identify and arrest her supplier.
 
 
 3
 Defendant Nunez was Lackonsingh's supplier. Law enforcement officials fitted Lackonsingh's home telephone with a cassette recorder, which she used to record conversations with Nunez. Lackonsingh was also given a recorder which she carried in her purse to record conversations during her meetings with Nunez. During these meetings, Lackonsingh also wore a transmitter attached to her belt. The transmitter enabled agents to listen to Lackonsingh's discussions with Nunez. At trial, the recordings of the telephone conversations were played for the jury. Because the recordings of the meetings were virtually inaudible, however, those tapes were not played for the jury; instead, an agent who simultaneously monitored those meetings testified as to the substance of the conversations he listened to.
 
 
 4
 On March 14, 1991, Lackonsingh placed a call to Nunez at Nunez's place of employment in Washington, D.C. Lackonsingh later met Nunez at Nunez's home in Maryland on four occasions in March and April. An FBI agent testified that he monitored these conversations, during which Lackonsingh and Nunez discussed Lackonsingh's desire to purchase four and one-half ounces of cooked cocaine. Nunez, who said that only powder cocaine was available, mentioned her New York connections, or suppliers, during several of these meetings.
 
 
 5
 The sale to Lackonsingh was consummated on April 16, 1991. Lackonsingh went to a salon in Washington, D.C., where she met Nunez. She paid Nunez $4700. Nunez then left the salon and got into a car with two men. The car bore New York license plates. Agents followed the car to an apartment building around the corner. Nunez and her companions entered the building. They stayed inside for approximately five minutes. Nunez returned to the salon and gave Lackonsingh a packet containing a package of white powder, which proved to be 124 grams of cocaine. Lackonsingh and officers who had surveilled the transaction then drove to the local FBI office, where Lackonsingh turned over the cocaine she had purchased. Nunez subsequently was arrested.
 
 II.
 
 6
 Nunez first complains that the tape recordings of the meetings between Lackonsingh and herself should not have been introduced into evidence because they were inaudible. A review of the record reveals that this argument lacks merit: the tapes of the meetings were not played for the jury. Further, Nunez did not raise on appeal the propriety of the admission of the testimony of the FBI agent who listened to those conversations and summarized them for the jury. In any event, given the extensive direct testimony of Lackonsingh about her business relationship with Nunez and, particularly, the details of the April 26 transaction, as well as the testimony of the FBI agent who monitored the conversations, neither the admission of the tapes nor the admission of the testimony regarding the conversations was error. Cf. United States v. Taylor, 900 F.2d 779 (4th Cir. 1990).
 
 III.
 
 7
 Nunez next asserts that, with respect to the distribution count, venue did not lie in the District of Maryland, but, instead, in the District of Columbia. This argument is without merit.
 
 
 8
 Under 18 U.S.C. § 3237(a) (1988), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be ... prosecuted in any district in which such offense was begun, continued, or completed." The prosecutor must show by a preponderance of the evidence that venue is proper. United States v. Griley, 814 F.2d 967, 973 (4th Cir. 1987).
 
 
 9
 Distribution under § 841(a) is a continuous offense, which is broadly read to include the transfer, delivery, arrangement of sales, and even constructive delivery of drugs. See United States v. Brunty, 701 F.2d 1375, 1381 (11th Cir.) (collecting cases), cert. denied, 464 U.S. 848 (1983). In the instant case, it is clear that some preparation for the transfer of cocaine to Lackonsingh occurred in the District of Maryland. Lackonsingh and Nunez met on March 25, March 27, and April 14, 1991, at Nunez's Maryland home to discuss the impending purchase. Financial arrangements and Nunez's sources were mentioned during these meetings. Venue in the District of Maryland accordingly was proper.
 
 IV.
 
 10
 Finally, Nunez claims that there was insufficient evidence to sustain her conspiracy conviction. This Court will sustain a jury's guilty verdict "if there is substantial evidence, viewed in the light most favorable to the government, to support the finding of guilt." United States v. Rusher, 966 F.2d 868, 878 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (1992). The test is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 11
 To establish a conspiracy under § 846, the government must prove: "(1) an agreement between two or more persons to undertake conduct that would violate the laws of the United States relating to controlled substances and (2) the defendant's willful joinder in that agreement." United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991).
 
 
 12
 In this case, Nunez clearly was working with a source in New York to obtain her cocaine. The two men who transported her to the apartment where she obtained the cocaine on April 26 may have been that source, or they may have merely been intermediaries through whom Nunez obtained the cocaine. In any event, it is apparent that Nunez was working with at least one other person to obtain the cocaine which she sold to Lackonsingh. Under these circumstances, there was sufficient evidence to support the guilty verdict on the conspiracy count.
 
 V.
 
 13
 We accordingly affirm the conviction. As our review of the materials before us reveals that it would not significantly aid the decisional process, we dispense with oral argument.
 
 AFFIRMED