**Will HOLMES, Plaintiff–Appellee,**

v.

**ELGIN, JOLIET & EASTERN RAILWAY COMPANY, Defendant–Appellant.**

No. 93–2112.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1993.

Decided March 16, 1994.

1394

William H. Tobin, Ruman, Clements & Tobin, Hammond, IN, Frank C. Marino (argued), Eugene I. Pavalon, Michael L. Lauzon, Pavalon & Gifford, Chicago, IL, Stephen Eckman, Eckman, Collins, Strandness & Egan, Minneapolis, MN, for plaintiff-appellee.

Harold Abrahamson (argued), Abrahamson, Reed & Adley, Hammond, IN, for defendant-appellant.

Before BAUER, WOOD, Jr., and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

During the course of his employment by the Elgin, Joliet and Eastern Railway Company ("EJ & E"), Will Holmes's right hand was crushed in a piece of machinery leaving him with limited use of the fingers on that hand. Pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, Holmes brought a successful action against EJ & E and was awarded $375,000 in damages. EJ & E appeals, seeking either a new trial or a reduction in the award. We affirm.

### I.

On September 18, 1990, Holmes, a track laborer for EJ & E, was assigned to work with a tamper crew. Tamper crews operate large pieces of machinery called tampers to align and level railroad track. It was in one of these machines where Holmes's right hand was caught and crushed. Holmes sustained fractures to three of his fingers and suffered significant tendon and ligament damage. Subsequent surgeries failed to restore strength or flexibility to Holmes's hand. Holmes's treating physician, a hand specialist named Robert Schenk, testified that the injury resulted in a 50% impairment in Holmes's ability to flex the fingers on his right hand. Dr. Schenk concluded that the injury left Holmes without the strength and dexterity to return to his former duties. Holmes testified that the injury continued to cause him a considerable amount of pain. Despite extensive physical therapy, everyday activities such as tying shoelaces and buttoning shirts remained difficult tasks, and Holmes could no longer enjoy the recreational activities in which he used to participate. At the time of his injury, Holmes was 57 years old and earned approximately $25,000 per year.

Almost a year after the injury, EJ & E offered Holmes a position as a janitor in the camp building which housed the employees' lunchrooms, showers, and lockers. Holmes did not accept the offer. At trial, Holmes offered the testimonies of Dr. Schenk and a vocational counselor who agreed that Holmes was physically unable to perform the duties required. EJ & E, in support of its theory that Holmes's injuries were not so severe as to preclude him from returning to the work force, called experts who testified that Holmes was indeed capable of performing the duties required of the camp building janitor. Conflicting evidence was also offered as to whether, under the collective bargaining agreement, the janitorial job was a "preferential" position to be awarded based solely on seniority. For if it were such a position and if by hiring Holmes, EJ & E either displaced a more senior employee or rejected the application of a more senior employee, EJ & E would be in violation of the collective bargaining agreement. Finally, Holmes introduced evidence indicating that the camp building janitor was occasionally required to perform the duties of a track laborer. By all accounts, Holmes was not capable of fulfilling the duties of a track laborer. Based on Holmes's physical condition, the terms of provisions on seniority in the union contract, and the responsibilities of a camp building janitor, Holmes's attorney, in his closing statement argued to the jury that EJ & E's offer was not made in good faith.

Holmes requested a total of $844,249 in compensatory damages. The jury awarded him $500,000 but found that he was partially negligent. They assigned 25% fault to Holmes and the remainder was assessed to EJ & E. As a result, judgment was entered against EJ & E for $375,000.

### II.

EJ & E argues that the trial court made three errors. First, it contends that its motion for a new trial was erroneously denied because the jury's damage award was excessive. EJ & E's second objection is that the trial court abused its discretion in admitting into evidence the collective bargaining agreement. Finally, EJ & E contends that the closing remarks of Holmes's attorney were so inflammatory that they warranted a new trial.

#### A. Excessiveness of the Verdict

Trial judges may vacate a jury's verdict if they determine that the award was "monstrously excessive" or that the award has no rational connection to the evidence.

*Frazier v. Norfolk & W. Ry., Co.*, 996 F.2d 922, 925 (7th Cir.1993). The trial court may take into account whether the award is out of line when compared to other awards in similar cases. *Id.* We review the trial court's decision not to order a new trial under the abuse of discretion standard.

■ Though the jury awarded damages in the amount of $500,000, Holmes had in fact alleged damages in the amount of $844,249. This figure was comprised of the following components: $50,128 in past lost earnings; $144,121 in future lost earnings; $500,000 attributable to the nature and extent of the injury and the inability to function as a whole person; $100,000 in past pain and suffering; $50,000 in future pain and suffering. EJ & E challenges the jury's award in two ways. First, it argues that the jury's determination of Holmes's future lost earnings was erroneous. Then, after citing several FELA cases in which courts set aside damage awards as excessive, EJ & E argues that a comparison of this case to those cited supports the conclusion that damages were excessive.

EJ & E claims that the evidence presented at trial justified a reduction in the award. Relying primarily on the testimony of its medical expert, EJ & E contends that Holmes's injuries did not render him unemployable. Additionally, EJ & E argues that based on statistics entered into evidence indicating that the average railroad worker at Holmes's age and with comparable experience could be expected to work an additional 3.2 years, any award of future lost earnings should be limited to Holmes's $25,000 per year salary multiplied by the 3.2 years he could be expected to work.

Even if we were to assume that EJ & E had accurately determined how the jury made its calculation, its argument claims merely that the jury reached the wrong result from conflicting evidence. Holmes's treating physician specifically testified that the severity of his injury would prevent him from fulfilling the duties of a janitor. A vocational expert testified that when combined with his age and his functional illiteracy, the injury rendered Holmes unemployable. From this evidence, the jury was entitled to conclude that Holmes's injury rendered him unable to participate as a janitor for EJ & E or in the marketplace in general. Alternatively, evidence suggesting that EJ & E's job offer was a violation of the collective bargaining agreement could have led the jury to conclude that Holmes's only potential job opportunity, the janitorial position, was not offered in good faith. The fact that the jury accepted Holmes's version of events over those of EJ & E's does not constitute an abuse of discretion on the part of the trial court.

■ EJ & E offers a second challenge to the jury's damage award. It cites four cases in which the plaintiffs were awarded damages under FELA and in which the awards were deemed to be excessive. *Sharkey v. Penn Cent. Transp. Co.*, 493 F.2d 685 (2d Cir.1974); *Paturzo v. Metro–North Commuter R.R.*, 751 F.Supp. 1086 (S.D.N.Y.1990); *Worden v. Consolidated Rail Corp.*, 689 F.Supp. 35 (D.Mass.1988); *Seaboard Sys. R.R., Inc. v. Taylor*, 176 Ga.App. 847, 338 S.E.2d 23 (1985). EJ & E concludes that the similarities between the cited cases and this case dictate that we also find the damage award to be excessive.

This case is easily distinguishable from the cases cited by EJ & E. Most notably, in none of the cited cases was evidence presented indicating that the plaintiff was unable to function in the labor market. In fact in all of the cases, the plaintiff was able to return to employment soon after the injury. Though the injuries imposed some limitations on the plaintiffs' activities, there was no evidence that they were rendered completely unmarketable.

The judgment reached in the court below is consistent with our decision in *Frazier v. Norfolk & W. Ry., Co.*, 996 F.2d 922, 925 (7th Cir.1993). In *Frazier*, we upheld a verdict for $2.3 million which included among its components an award of $430,000 for future lost earnings and an award of $1 million for past and future pain and suffering. The plaintiff in *Frazier* aggravated a back injury on the job and was forced to undergo surgery to remove two disks from his vertebrae. His condition was expected to cause him pain and to limit the amount of lifting he could do.

Nevertheless, he was considerably more skilled than Holmes and, as a result, was able to find employment after the surgery. After reviewing the facts of similar cases and comparing the awards, we concluded that the award in *Frazier,* though large, was not particularly deviant. *See also, Schneider v. Nat'l R.R. Passenger Corp.,* 987 F.2d 132 (2d Cir.1993) (affirming an award of $1.75 million to an employee whose physical injuries consisted of multiple contusions and lacerations of the left thumb).

The jury's award in this case does not differ significantly from other awards in similar cases. Consequently, we hold that the jury's award of $500,000 in this case was not excessive.

### B. Admission into Evidence of the Collective Bargaining Agreement

■ Before commencing our discussion of EJ & E's second claim, some additional background on the events which unfolded at trial is necessary. From opening argument, it was clear that EJ & E maintained that Holmes could have performed the duties required of a janitor. In support of this position, EJ & E's Engineer of Track Construction, Steve Chambers, testified that the company was not bound by seniority in assigning janitorial duties. To impeach Chambers, Holmes offered into evidence, over EJ & E's objection, provisions of EJ & E's collective bargaining agreement which indicated that the rights to certain positions were determined by seniority. EJ & E claims that the admission of the collective bargaining agreement for impeachment purposes was improper because absent evidence that the seniority provision applied to the janitorial position, the contract was ambiguous and, therefore, failed to impeach Chambers. EJ & E argues also that admission of the contract for impeachment was merely a subterfuge for admitting it as substantive evidence.

■ We review the trial court's admission of evidence under the abuse of discretion standard, inquiring not whether we would have ruled the same way but rather whether any reasonable person would have agreed with the trial court. *Cook v. Navistar Int'l Transp. Corp.,* 940 F.2d 207, 212 (7th Cir.

1991). Discovery of an error does not end the inquiry, for if an error is deemed harmless, reversal is inappropriate. *Id.* Admission of cumulative evidence does not merit reversal absent a showing of prejudice. *Stutzman v. CRST Inc.,* 997 F.2d 291, 298 (7th Cir.1993).

We need not determine whether or not the jury was capable of assessing the contract's impeachment value because, even if admission of the contract was erroneous, reversal would not be warranted. The presentation of other evidence pertaining to the seniority provisions of the contract rendered its admission cumulative. Henry Taber, a senior union official, testified that the collective bargaining agreement did not allow EJ & E to offer the janitorial post to Holmes if a more senior employee desired the job. Taber added that if Holmes were hired, the union would file a grievance against EJ & E. Taber's testimony (to which no objection is raised here) served both to contradict Chambers and as substantive support for the conclusion that Holmes could not have been offered the janitorial position. EJ & E argues that it was prejudiced by admission of the contract because it was then forced to litigate the interpretation of the collective bargaining agreement. We do not find this claim persuasive. Had the contract not been entered into evidence, EJ & E would still have had to litigate the interpretation of the agreement's seniority provisions in order to rebut Taber's testimony.

EJ & E's concerns about the contract being used as substantive evidence are also without merit. In light of Taber's testimony, a finding that the offer was not made in good faith was likely to have been based not on the contract but rather on Taber's opinion.

### C. Closing Argument

■ In his closing remarks, Holmes's attorney argued that EJ & E's offer was not in good faith, and he implied that the sole motivation for the offer was to make EJ & E appear benevolent in this litigation. Although he believed that these remarks were inflammatory and unsupported by evidence, counsel for EJ & E did not object to the

statements and chose instead to respond in his own closing. EJ & E's attorney framed his response as a personal reprisal against opposing counsel and when opposing counsel objected, the court sustained the objection. Counsel for EJ & E continued his summation in which he argued that EJ & E's employment offer to Holmes was in good faith and was permissible under the collective bargaining agreement. Then, in rebuttal, Holmes's attorney again challenged the good faith of EJ & E, this time referring to evidence showing that of all EJ & E's disabled employees, only Holmes had been offered any sort of post-accident employment. Once again counsel argued that the evidence demonstrated that EJ & E was not sincere in its offer, and he concluded that because Holmes was physically unable to perform the job, EJ & E would not keep him employed once the trial was concluded. EJ & E's attorney found this also to be inflammatory, but again he chose not to object. Nor did he move for a mistrial. Instead, EJ & E waited to raise the objection until after the jury had delivered its verdict. EJ & E now claims that the trial court's decision to sustain Holmes's objection to its closing remarks rendered it unable to respond to the inflammatory statements and mandates reversal.

■■■ EJ & E's argument is without merit. The trial court's ruling did not prevent EJ & E from responding to Holmes's closing statements so long as counsel refrained from personal attacks on Holmes's attorney. Moreover, EJ & E had several·opportunities to object to the remarks it found inappropriate but it chose not to object until the jury returned an adverse verdict. "[R]isky gambling tactics such as this are usually binding on the gambler." *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 298 (7th Cir. 1985). As a result, the objection is considered waived. The law in this circuit is clear. In civil cases, to preserve for appellate review errors which are alleged to have occurred during closing argument, a party must object to those errors before the trial judge submits the case to the jury to deliberate. *Deppe v. Tripp*, 863 F.2d 1356, 1364 (7th Cir.1988). This rule enables a trial judge to make any necessary curative instructions. Exceptions to this rule are few

and do not apply in this case. *See Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 366 (7th Cir.1992) (Errors which are alleged to relate to the trial court's subject matter jurisdiction may be raised for the first time on appeal if the district court's decision is plain error or if there are exceptional circumstances where justice demands more flexibility.). Consequently, nothing the trial court did during closing arguments served to prejudice EJ & E in its attempt to refute remarks made in Holmes's summation. Furthermore, any claims of impropriety which EJ & E might have had based on Holmes's closing statement were squandered when EJ & E failed to object in a timely fashion.

### III.

EJ & E has failed to demonstrate the need for either a new trial or an outright reversal in this case. For the foregoing reasons, the judgment of the district court is

AFFIRMED.