**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**August JOHNSON, Jr., Defendant–Appellant.**

**No. 96–1131.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1997.

Decided Oct. 17, 1997.

Estaban F. Sanchez (argued), James E. Beckman, Office of the U.S. Atty., Springfield, IL, for Plaintiff–Appellee.

Michael J. Costello (argued), Springfield, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

August Johnson, Jr. was convicted by a jury of two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On appeal, Johnson raises three contentions: 1) there was insufficient evidence presented at trial to support his conviction; 2) his 262–month sentence was the result of the district court's misapplication of the Sentencing Guidelines; and 3) certain evidence admitted by the district court at trial was hearsay. For the reasons set forth below, we affirm.

## BACKGROUND

The following brief factual summary, presented in a light most favorable to jury's verdict, is gleaned from the record of this case. On March 24, 1993, Illinois State Police Sergeant Bruce Kettelkamp ("Kettelkamp") was acting in an undercover capacity while investigating the sale of controlled substances in Springfield, Illinois. On that day, Kettelkamp was searching for a woman who had taken $200 from him several days earlier during another undercover operation. While so engaged, Kettelkamp met the defendant, August Johnson, Jr. ("Johnson"), and inquired if he knew where the woman was. Johnson said he did not, and the conversation between the men turned to drugs. Kettelkamp informed Johnson that he wanted to purchase some crack cocaine, and Johnson told Kettelkamp that he would be right back. Johnson went to the back of a nearby house and returned with another, unidentified man. Johnson and the man entered Kettelkamp's car, and the man gave Kettelkamp five packets containing crack in exchange for $100. The unidentified man left the car, and Kettelkamp paid Johnson a $10 "finder's fee" for setting up the transaction. Johnson then left Kettelkamp's automobile. During this time, Kettelkamp was "wired" with a listening device, and the episode was captured on an audio tape.

On March 30, 1993, Kettelkamp again met with Johnson. Kettelkamp told Johnson that he wanted to buy more crack, and Johnson went to the back of the same residence. Johnson returned to Kettelkamp's car a short time later, this time alone, and gave Kettelkamp a total of five packets containing crack in exchange for $110. After the drug transaction, Kettelkamp inquired if Johnson could come up with a gun for Kettelkamp to purchase from him. Johnson said that he could, and it was arranged that the two would meet the next day. As with their previous meeting, Kettelkamp was wearing a transmitter and the transaction was recorded on audio tape.

Despite their arrangement, Johnson and Kettelkamp did not meet again until June 28, 1993. At that time, Kettelkamp reminded Johnson that he was looking for a gun, and Johnson replied that he had one for him. Johnson then went unaccompanied to the front porch of a nearby residence, where he spoke with an elderly lady. The woman raised her hip and handed Johnson a gun, which he brought over to Kettelkamp's vehicle. Johnson got inside, showed Kettelkamp the gun and some ammunition, and gave Kettelkamp the gun and bullets in exchange for $80. Johnson then left Kettelkamp's truck and went back to the residence. For this transaction, Kettelkamp drove a pickup truck outfitted with a video camera. A video tape of the meeting briefly showed Johnson talking to Kettelkamp through the driver's window, but did not record the actual exchange of the gun and cash.

On December 7, 1994, a grand jury in the Central District of Illinois indicted Johnson on three counts stemming from his activities: two counts of knowingly distributing a controlled substance and one count of being a felon in possession of a firearm. After a two-day trial, a jury convicted Johnson on all three counts on March 15, 1995. On January 9, 1996, Johnson was sentenced by District Judge Richard Mills to a term of imprisonment of 240 months on Counts I and II, to run concurrently, and an additional 22 months of imprisonment on Count III, to run consecutively. Johnson also was placed on five years supervised release following his release from prison and was ordered to pay a special assessment of $150. On January 17, 1996, Johnson filed a timely notice of appeal, alleging that his conviction and sentence

were both erroneous. With these facts in mind, we turn to Johnson's contentions.

## ANALYSIS

### 1. Sufficiency of the Evidence

██ First, Johnson argues that his conviction was not supported by sufficient evidence. This Court has repeatedly recognized that defendants challenging the sufficiency of the evidence at trial face a "nearly insurmountable hurdle." *See, e.g., United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir.1997) (citations omitted). In reviewing the sufficiency of the evidence in a criminal case, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979) (emphasis in original) (citation omitted). In so doing, "we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Moore*, 115 F.3d at 1363. An examination of the record illuminates that the evidence presented in this case overwhelmingly supports the jury's verdict, and the district court's judgment must be affirmed.

██ In order for the jury to convict Johnson on Counts I and II of the indictment, which charged him with distributing cocaine base (known outside legal circles as "crack") in violation of 21 U.S.C. § 841(a)(1), the government needed to prove the following elements: 1) that Johnson distributed crack; 2) that he did so knowingly and intentionally; and 3) that he knew the substance being distributed was a controlled substance. For purposes of the statute, "distribution" is defined as the transfer of possession from one person to another. Since Johnson was charged in Count I with aiding or abetting the distribution of crack, the first element is a bit modified and required the government

to show that Johnson knowingly associated himself with an individual who distributed crack, participated in the venture, and tried to make it succeed. The evidence presented by the prosecution amply demonstrated all of the foregoing, and Johnson's challenge to Counts I and II must fail.

At trial, Sergeant Kettelkamp testified that on March 24, 1993, he was searching for a woman who had stolen $200 from him during an undercover operation several days earlier when he ran into Johnson. Kettelkamp asked Johnson if he had seen the woman, and Johnson replied that he had not. Their conversation eventually turned to drugs, and Kettelkamp informed Johnson that he wanted to buy a sixteenth ounce of cocaine (more commonly known as a "teeny-bopper" or a "bop" in drug parlance). Johnson related that it would be no problem, and instructed Kettelkamp to park his car and wait for Johnson to return. Johnson then went to the back of a house at 1204 East Jackson and returned with an unidentified black male. Johnson and the man got in Kettelkamp's car, and Kettelkamp gave the unidentified man $100 in exchange for 5 packets containing what was identified by forensic scientist John Martin to be crack. The man left the car after a brief conversation with Kettelkamp, but Johnson remained. Johnson told Kettelkamp that he would take care of Kettelkamp and that he could be trusted, and told Kettelkamp that he wanted a reward for bringing him somebody who had crack. Kettelkamp paid Johnson $10 as a "finder's fee," and Johnson left the car. This version of events was corroborated by a tape recording of the dealing between Johnson and Kettelkamp, which was played to the jury.

This evidence unquestionably could have led a rational jury to find all of the elements of Count I beyond a reasonable doubt. Taken in a light most favorable to the government, Kettelkamp's testimony showed that Johnson brought the unknown man back to Kettelkamp's car after Kettelkamp informed Johnson that he wanted to buy a "bop" of crack. The man ultimately sold Kettelkamp the drugs, and Johnson received a "finder's fee" for his help in arranging the transaction.

From this, the jury could have logically found beyond a reasonable doubt that Johnson associated himself with the unknown drug seller, participated in the sale, and tried to make it succeed. Kettelkamp's testimony, as well as the audio tape of the transaction, also showed that Johnson knew that he was participating in a drug transaction involving crack. Evidence establishing all of the elements of the offense was presented to the jury, and a guilty verdict could have been rationally reached.

Similarly, with regard to Count II, Sergeant Kettelkamp testified that he was working undercover on March 30, 1993, when he again met with Johnson in the vicinity of Twelfth and Jackson Streets at about 1:35 p.m. Kettelkamp and Johnson discussed Kettelkamp's desire to purchase a "bop" of crack, and Johnson went to the back of the building located at 1204 East Jackson. Johnson returned to Kettelkamp's vehicle a short time later (this time unaccompanied) and gave Kettelkamp four packets containing what was later identified as crack. Kettelkamp testified that he customarily received six packets of crack for $100 in that neighborhood (which is well-known for its drug activities) and that, after further discussion with Johnson, Johnson gave him a fifth packet. Kettelkamp gave Johnson $110 in return for the packets of crack. Kettelkamp also asked Johnson if he could come up with a gun for Kettelkamp to purchase from him. Johnson responded that he could, and he and Kettelkamp planned to meet again the next day for the purchase to take place. (This meeting, however, did not take place for several months). This testimony was corroborated by an audio tape recording of the meeting, which was also played for the jury.

This evidence was also sufficient to establish Johnson's guilt on Count II beyond a reasonable doubt. Taken favorably to the government, it showed that Johnson transferred possession of crack from himself to Kettelkamp, that he knew that the substance was crack, and that he intended to engage in the transaction. Those are the three things the government needed to prove, and a rational jury certainly could have found that it had from the evidence presented. There was thus ample evidence that Johnson had committed the crimes with which he was charged in Counts I and II, and his argument to the contrary is unavailing.

██ For a conviction on Count III of the indictment, which charged Johnson with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), the government needed to prove the following: 1) that Johnson had a previous felony conviction; 2) that he knowingly possessed the firearm described in the indictment; and 3) that the firearm had traveled in or affected interstate commerce. *United States v. McNeal*, 900 F.2d 119, 121 (7th Cir.1990). Johnson cannot seriously contend that elements 1 and 3 were not sufficiently proven, as it was stipulated by the parties that Johnson had previously been convicted of a felony and that the firearm involved had traveled in and affected interstate commerce. That leaves only the second element for our consideration, and Johnson's argument is equally unavailing there. The government presented ample evidence, through the testimony of Sergeant Kettelkamp, from which a rational jury could find that Johnson knowingly possessed the firearm. Kettelkamp testified that on June 28, 1993, he parked in front of the residence at 1204 East Jackson and was met by Johnson. Johnson said that he had the gun and went up to the front porch of the residence. He spoke to an elderly lady sitting in a chair, who raised her hip and handed Johnson the gun. Johnson brought it to Kettelkamp's car, got inside, and gave it to Kettelkamp (along with some bullets) for $80. This testimony certainly could lead a reasonable jury to determine that Johnson knowingly possessed the firearm—it shows that he consciously went from Kettelkamp's car to the front porch and received the gun from another person. These actions clearly fall within the ambit of "knowing possession." Having introduced sufficient evidence to establish all three elements, the prosecution met its burden, and Johnson's argument also fails on Count III.

### 2. Misapplication of the Sentencing Guidelines

Johnson next argues that the district court, in determining that a 262–month sen-

tence was appropriate, misapplied the Sentencing Guidelines. Johnson does not attack the offense level (32) or the criminal history level (VI) determined and applied by the district court in reaching the appropriate punishment range for his offenses (210262 months). Rather, Johnson argues that the district court erred in imposing a 240 month sentence for Counts I and II and a consecutive 22 month sentence on Count III. The district court apportioned the 262 month sentence in this fashion pursuant to Sentencing Guideline § 5G1.2(d), which provides the following:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

Johnson argues that this section should not have applied to his case because the maximum statutory sentence the district court could impose was 20 years. This argument is without merit, and we affirm Johnson's sentence.

■ Johnson's allegation that a district court cannot impose a total sentence in excess of the statutory maximum of one of the counts for which a defendant is convicted is puzzling, given that the plain language of section 5G1.2(d) clearly allows the court to impose a consecutive sentence for one or more counts when the statutory maximum on any other count is less than the total punishment computed under the sentencing guidelines. The gist of Johnson's assertion is that the district court should not have done what it is specifically commanded to do by the Guidelines, a position which must necessarily fail. Johnson's argument is further deflated by previous decisions of this Court. *See United States v. Pollard*, 72 F.3d 66, 69 (7th Cir.1995) (noting that "the law is that a court

must impose consecutive sentences when necessary to impose the total punishment prescribed by the applicable guideline range," citing section 5G1.2(d) and *United States v. Masters*, 924 F.2d 1362 (7th Cir.), *cert. denied*, 500 U.S. 919, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991)); *United States v. Maggi*, 44 F.3d 478, 481 (7th Cir.1995) (upholding consecutive sentences given by district court pursuant to section 5G1.2(d)). The district court correctly applied section 5G1.2(d) pursuant to both its own clear language and the precedent of this Court, and Johnson has failed to show any error.[1]

### 3. Admission of Hearsay

■ Finally, Johnson argues that the district court erroneously admitted the testimony of FBI Special Agent Mark Ranck, claiming that it was hearsay. When reviewing the decisions of a district court to admit or exclude evidence, we utilize the abuse of discretion standard. *Kelly v. Municipal Courts of Marion County, Indiana*, 97 F.3d 902, 912–13 (7th Cir.1996). Thus, our inquiry is not whether we would have ruled the same way but rather whether any reasonable person would agree with the trial court. *Holmes v. Elgin, Joliet & Eastern Railway Co.*, 18 F.3d 1393, 1397 (7th Cir.1994).

The following colloquy, which took place between the prosecution and Ranck on direct examination, is the basis for Johnson's claim:

Q: What happened after he spoke with that individual?

A: Well, we had set up a surveillance location where we were attempting to get a visual view of Agent Kettelkamp's vehicle. And we found out later that the individual that he met with was Auggie Johnson.

Mr. OTWELL [counsel for Johnson]: Objection as to foundation and hearsay, Your Honor.

The COURT: No. I think that's proper. He's saying what he found out later. If you wish to go into that, we'll give you every opportunity on cross. Go ahead, Mr. Beckman.

---

1. At oral argument, Johnson's counsel also asserted that section 5G1.2(d) is unconstitutional. Having failed to raise this argument in his brief, however, Johnson waived it and we need not

address it here. *Ricci v. Arlington Heights, Ill.*, 116 F.3d 288, 291–92 (7th Cir.1997) (citations omitted).

Q: After he met with Mr. Johnson, did Agent Kettelkamp obtain anything from Mr. Johnson, to your knowledge?

    Mr. OTWELL: Same objection, Your Honor.

    The COURT: Same ruling.

A: Could you repeat the question?

Q: After Mr. Kettelkamp met with the Defendant or with Mr.—with August Johnson, did Mr. Kettelkamp obtain anything from Mr. Johnson?

A: Yes, he did.

Q: Do you know what he obtained?

A: He obtained small rocks of crack cocaine.

Q: What happened—and did you know if Agent Kettelkamp gave Mr. Johnson anything in exchange for that crack cocaine?

    Mr. OTWELL: Your Honor, just to show my continuing

    The COURT: Yes. Yes, it may.

A: Agent—or Agent Kettelkamp showed or gave Mr. Johnson cash for the crack cocaine.

Tr. at 231–32. Johnson claims that this testimony was hearsay and that the court committed reversible error in admitting it at trial. Even assuming arguendo that the testimony was hearsay (something on which we need not pass judgment in light of our discussion below), its admission was not erroneous, and Johnson's conviction must be affirmed.

 Prior to Special Agent Ranck's testifying at Johnson's trial, Sergeant Kettelkamp had testified that on March 30, 1993, he met with Johnson and obtained five bags of crack from him in exchange for $110. Tr. at 121–22. Ranck's testimony, which basically related the same facts, was merely cumulative of Kettelkamp's and did not place any new information before the jury. No danger arose, therefore, that the jury relied solely on Ranck's testimony in finding that Johnson had sold crack to Kettelkamp. Because of its limited (or nonexistent) prejudicial effect on the defendant, the admission of hearsay by the trial court constitutes harmless error

when it is cumulative to other testimony already presented.[2] *See United States v. Brown*, 31 F.3d 484, 491 (7th Cir.1994); *United States v. Carter*, 720 F.2d 941, 948 (7th Cir.1983). Since no harm flowed from the admission of Ranck's testimony, we must affirm the district court's ruling. *Holmes*, 18 F.3d at 1397 ("Discovery of an error does not end the inquiry, for if an error is deemed harmless, reversal is inappropriate.").

 Furthermore, the admission of cumulative evidence does not merit reversal absent a showing of prejudice by the defendant. *Id.* Johnson did not attempt to argue any prejudice in his brief, and we do not find that any arose. First, this is not a case where the alleged hearsay was the only proof of the defendant's guilt; beside Ranck's testimony, Kettelkamp provided first-hand testimony regarding Johnson's drug-related activities. Furthermore, Kettelkamp's testimony was corroborated by audio tapes of his meetings with Johnson, not solely by Ranck's statements. The admission of Ranck's statements, in the context of his entire testimony and of the entire body of evidence presented at trial, did not cause Johnson any prejudice, and the admission of Ranck's testimony does not constitute reversible error.

### CONCLUSION

For the reasons stated above, Johnson's conviction and sentence are AFFIRMED.

---

**2.** Accordingly, we need not determine whether Ranck's testimony actually was hearsay; *even if* it was hearsay and was erroneously admitted, the

fact that the evidence is cumulative renders the error harmless. idence is cumulative renders the error harmless.