165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
JUDRICKS ENTERPRISES LIMITED, an Ontario corporation,
Plaintiff-Appellant,
v.
CATERPILLAR, INCORPORATED, a Delaware corporation, Defendant-Appellee.
 Nos. 97-2073, 97-2149.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 8, 1997.
Decided Aug. 19, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois, Peoria Div. No. 92 C 1277. Joe B. McDade, Judge.
 Before Hon. MICHAEL S. KANNE, Hon. ILANA DIAMOND ROVNER, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Judricks Enterprises, Ltd. ("Judricks") and Caterpillar, Inc. ("Caterpillar") entered into an agreement for Judricks to supply connecting rods for Caterpillar engines.[1] Eventually, a number of problems arose in the relationship. The first batch of rods that Judricks sent to Caterpillar was defective, but Caterpillar did not discover the flaw until a rod installed by a customer tore up an engine. Caterpillar then determined that the center distance measurement on the rods was not within the specifications it supplied to Judricks. Caterpillar returned the rods to Judricks and refused to pay for them. In its complaint, Judricks asserted that Caterpillar should pay for the nonconforming rods because it should have discovered the defect much earlier, in a sample batch of 30 rods sent to Caterpillar at the start of the production. Caterpillar's quality control department received those sample rods, but they claim that they never conducted their own measurements of the center distance. Judricks sent its own center distance measurements to quality control with the sample rods, and those numbers were within the specifications. The problem, it turned out, was that Judricks positioned the rods incorrectly in taking the measurement, so those numbers did not accurately reflect the center distance measurement. Eventually, the problem was corrected and Judricks began producing conforming rods for Caterpillar. Even that production, however, did not fulfill the parties' expectations. Judricks had problems meeting the production goals, which was attributable to a number of causes including problems with machines, some of which came from Caterpillar. In any case, Caterpillar ultimately decided to take its business elsewhere, and ceased ordering rods from Judricks. In its complaint, Judricks claimed that Caterpillar contracted to purchase those connecting rods exclusively from Judricks for five years. Judricks also complained that Caterpillar refused to pay for 226 rods that were delivered in a torqued condition, because Caterpillar wanted them untorqued.[2] Finally, Judricks asserted that a price increase granted by Caterpillar should have taken effect on March 1, 1990, rather than May 15 of that same year. The district court granted summary judgment to Caterpillar on a number of claims, and a jury returned a verdict for Caterpillar on the remaining counts. Judricks now challenges the grant of summary judgment, the exclusion of evidence and the imposition of time limitations at trial, and certain jury instructions.
 
 I.
 
 2
 A number of the challenges raised by Judricks were never presented to the district court, and are therefore waived. First, Judricks complains that the court erred in granting summary judgment on Count III, which sought payment for the rods that Caterpillar rejected because the center distance was non-conforming. Judricks argues that the UCC, as adopted in Illinois, holds a buyer liable for payment for non-conforming goods where the non-conformity was or should have been discovered by the buyer. See 815 ILCS 5/2-606 & 5/2-607(3)(a). That argument was not presented to the district court. In its motion for summary judgment on Count III, Caterpillar argued that it had the right to reject the defective goods without payment pursuant to the warranty provision in the purchase order. Under that provision, Judricks warranted that all goods conformed to the specifications regardless of the buyer's acceptance of the goods. Judricks responded that Caterpillar waived the warranty because it accepted the rods after its quality control department had an opportunity to inspect them. The district court rejected Judricks' waiver argument and granted summary judgment in favor of Caterpillar because Judricks presented no evidence that Caterpillar was either aware of the defect or had an obligation to inspect the rods in order to preserve its warranty rights.
 
 
 3
 Judricks now argues for the first time that §§ 2-606 & 2-607(3)(a) of the UCC prohibit Caterpillar from rejecting the goods and refusing payment. See 810 ILCS 5/2-606 & 5/2-607(3)(a). Section 2-606 defines acceptance as occurring where a buyer, after a reasonable opportunity to inspect, signifies that goods are conforming. Once goods are accepted, section 2-607(3)(a) bars a buyer from any remedy unless the buyer notifies the seller of a breach within a reasonable time after the buyer discovered or should have discovered the breach. This UCC-based argument is fundamentally different from the warranty-waiver argument Judricks raised below, and involves distinct legal theories. We have long held that a party opposing a summary judgment motion must present its legal and factual defenses to the trial judge, and that any defenses not so presented cannot be raised on appeal of an adverse summary judgment decision. Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir.1983). It is not enough that both defenses relate generally to the buyer's ability to reject non-conforming goods. The district court is entitled to be presented with the legal theories underlying the defenses. Id. In the district court, Judricks raised only a common law argument that Caterpillar waived its written warranty provision, and never argued that the UCC provisions limited Caterpillar's right to reject the goods. Therefore, the UCC argument was waived and cannot form a basis for reversing the grant of summary judgment regarding Count III. Judricks does not repeat its common law warranty-waiver argument to this court, and therefore has presented no argument which would require reversal of summary judgment regarding Count III.
 
 
 4
 Judricks also challenges certain jury instructions, arguing that they erroneously presented the jury with the common law concepts of offer and acceptance rather than the more expansive understanding of contract formation found in the UCC. We need not address the propriety of the challenged instructions because we find that argument was waived as well.[3]
 
 
 5
 In a memorandum to the district court, Judricks opposed Caterpillar's proffered instructions that defined contract formation in terms of offer and acceptance. Judricks argued that the terms "offer" and "acceptance" were common law concepts that no longer were required for contract formation under the UCC. Judricks submitted its own jury instruction, which drew its definition of contract formation from the UCC. In a telephone conference on the record, the district court stated that it was inclined to give Judricks' instruction, but also to give Caterpillar's proposed instructions because the concepts of offer and acceptance were "still part of the UCC law in this area" and because the jury required a definition of rejection as well. Transcript (Tr.) of Conference Call, January 24, 1997, at 26. Neither party objected to this ruling by the court. A number of times in the conference call, the court stated that its rulings were tentative and that either side should "make its record" and have the court rule on its tendered instructions. The court also invited the parties to submit new instructions and to work on mutually acceptable instructions. Judricks did not submit any new instructions to address the court's concerns with offer and acceptance under the UCC, or with the definition of rejection. Later in the trial, the court again raised the issue of jury instructions. At that point, Judricks declined to present its objections again, stating that it had presented its position on the record at the telephone conference.
 
 
 6
 Of course, no objection had been made at the telephone conference to the court's ruling regarding Caterpillar's proposed instructions, but we will assume that Judricks meant by that comment to include the objections set forth in the written memorandum. Even under that interpretation, however, Judricks' argument against waiver must fail. Judricks' argument to the district court that the common law concepts of offer and acceptance are inapplicable in the context of the UCC is simply incorrect. We have recently recognized that "the UCC retains the basic common law requirements of offer, acceptance, and consideration." Echo, Inc. v. Whitson Co., Inc., 121 F.3d 1099, 1103 (7th Cir.1997)(applying Illinois law); Architectural Metal, Inc. v. Consolidated Inc., 58 F.3d 1227, 1230 (7th Cir.1995). Therefore, the district court properly rejected Judricks' argument that the instructions were defective because of the focus on the terms offer and acceptance. Moreover, the facts in the case gave rise to a question of whether the offer was rejected, and the court properly held that the jury should receive some definition of "rejection." In other words, Judricks' only objection to the instructions was based upon its belief that the UCC had abandoned the common law concepts of offer and acceptance. The district court properly held that those concepts retained viability. Judricks did not avail itself of the multiple opportunities presented by the court to object to the specific definitions of offer, acceptance and rejection used in those instructions, nor did Judricks provide an alternative instruction defining those terms. Judricks cannot, therefore, argue that the definition of those terms is improper, because that argument is waived.[4] See Gordon v. Degelmann, 29 F.3d 295, 298 (7th Cir.1994)(need to point out problems in an instruction to district court); Lancaster v. Norfolk & Western Ry., 773 F.2d 807, 823 (7th Cir.1985)(failure to offer correct instruction or any instruction will excuse trial judge's use of incorrect instruction). To the extent that Judricks preserved its objection that inclusion of those terms was inappropriate under the UCC, that argument fails on the merits for the reasons stated above.
 
 
 7
 Judricks also contends that the trial court erred in limiting the length of the trial, and that it was not provided sufficient time to conduct its cross-examination and to present its rebuttal case. This argument is frivolous. On a Thursday during the trial, the district court cautioned Judricks that it was spending an inordinate amount of time on a minor point, and that the trial must be completed by the next available court day, which was the following Tuesday. Judricks did not object to that time limitation, and never indicated that it would be unable to fully present its case. Later that same day, Judricks completed its cross-examination of a witness with an hour of trial time to spare. Both the court and the opposing counsel urged Judricks to present the testimony of at least one of its rebuttal witnesses during that free hour. Judricks declined to use that spare hour, indicating that it would pare down the remaining testimony and finish in an hour on the final day. The court cautioned Judricks that it would be held to its representation regarding the time needed on Tuesday, and warned Judricks that it should present a witness in the remaining hour if necessary to finish the case by Tuesday. On the following Tuesday, Judricks completed its case, again without objecting to the time constraints. Given this chronology, it is incomprehensible that Judricks could now complain about the time limitation. This argument is waived, see e.g. United States v. Pryor, 957 F.2d 478, 481 (7th Cir.1992), and in any case is frivolous.
 
 
 8
 We are left, then, with three issues to address on the merits. Judricks contends that the district court improperly granted summary judgment on Counts IV and V of the complaint, and that the court erred in refusing to allow it to present evidence at trial of Caterpillar's opportunity to inspect the sample rods. We will uphold summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, drawing all reasonable inferences in favor of the non-moving party. Darnell v. Target Stores, 16 F.3d 174 (7th Cir.1994). We note, however, that " 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." ' Eiland v. Trinity Hospital, 1998 U.S.App. LEXIS 17019,* 5 (7th Cir. July 24, 1998)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original)).
 
 
 9
 Count IV of the complaint addressed Caterpillar's refusal to pay for a shipment of 83 straight rods and 143 serrated rods that were delivered in a torqued condition. Judricks asserted below that the print specifications and the past practice of the parties established that the rods were properly shipped in a torqued condition. Caterpillar countered that the rods should have been delivered untorqued, and it was therefore justified in returning them. On appeal, Judricks has dropped its contention that the print specifications required that the rods be torqued. Thus, the only issue is whether a factual dispute exists regarding the past practice of the parties. The record demonstrates that the district court's grant of summary judgment in favor of Caterpillar on this count was correct. The president of Judricks as well as its manufacturing supervisor and its master mechanic admitted in depositions that the rods were always shipped untorqued at Caterpillar's request except for the initial sample batch of 30 rods. Those sample rods were shipped torqued to facilitate accurate measurement by Caterpillar. In an affidavit filed in response to the summary judgment motion, Judricks' president, Inder Nayar, stated:
 
 
 10
 The standard practice of Judricks and Caterpillar was to ship rods in a torqued condition whenever there was any requirement for accurate measurement. Most typically, this need for accurate measurement would occur in connection with the initial shipments of any rod category which we provided. If disputes were to arise later concerning rod dimensions, however, the practice would have been to ship the rods in a torqued condition so that accurate measurements could be obtained.
 
 
 11
 Affidavit of Inder Nayar at 12. He then declared that because a dispute had arisen over dimensions on preceding shipments, he shipped the rods in a torqued condition.
 
 
 12
 This affidavit is insufficient to avert summary judgment for two reasons. First, according to Nayar's deposition, the dispute over measurements involved the serrated rods only, not the 83 straight rods that were also shipped in a torqued condition. Therefore, Judricks has asserted no justification for shipping the 83 straight rods in a torqued condition when the parties' admitted practice was to deliver them untorqued. More fundamentally, Nayar's affidavit identifies no instance of past practice between Caterpillar and Judricks in which rods were shipped in a torqued condition in response to a measurement dispute. Instead, the affidavit merely posits what would have happened had a dispute arisen in the past. Nayar's own deposition testimony makes this clear. In his deposition, Nayar testified that in past contracts with Caterpillar, the rods had been shipped torqued, but that for this contract, Caterpillar requested that they be shipped untorqued. Nayar Deposition at 191-192. Therefore, his postulations regarding the need to ship the rods torqued to address measurement disputes could refer only to prior dealings in this particular contract. With respect to this contract, however, Nayar and other agents of Judricks testified that only the sample batch had previously been shipped in a torqued condition. Therefore, Nayar's affidavit statement does not refer to any actual incident, but merely reflects his views on what would have happened had a dispute arisen. That is not evidence of past practice but rather is mere speculation, and the district court properly granted summary judgment on that count. See Anderson, 477 U.S. at 247-48.
 
 
 13
 Judricks also challenges the district court's grant of summary judgment in favor of Caterpillar on Count V, regarding its right to a price increase. Caterpillar claims that it agreed to a price increase only as of May 15, 1990, but Judricks asserts that the price increase was to be effective March 1, 1990. This argument is without support in the record. In his deposition, Nayar testified that he requested a price increase in January and Caterpillar replied that any such request must be made in writing. Nayar admitted that he "got busy" and did not send the request until sometime in March. He further declared that because he "could not go back retroactive," he dated the letter March 1. Finally, he conceded under questioning that no one promised him a specific price increase for the serrated connecting rod as of March 1. Judricks failed to present any testimony, other than conclusory assertions, which indicates an agreement to grant a price increase as of March 1. Therefore, the district court's decision to grant summary judgment for Caterpillar was proper. Id.
 
 
 14
 Finally, Judricks protests the district court's decision to exclude evidence at trial. A district court's decision to admit or exclude evidence will be reversed only for an abuse of discretion. U.S. v. Johnson, 127 F.3d 625, 630 (7th Cir.1997). The excluded evidence included a stipulation summarizing the deposition testimony of Judricks' manufacturing supervisor regarding the sample rods sent to Caterpillar. The stipulated testimony was that 30 sample rods were sent to Caterpillar, and that Caterpillar informed Judricks that the quality control department had approved the rods and requested that the rest be delivered. Judricks sought to introduce this testimony to rebut Caterpillar's claim that the value of the contract was substantially impaired by the defects in the rods. According to Judricks, the testimony demonstrated that Caterpillar approved the non-conforming rods, and thus was responsible for the adverse consequences of the defects. The district court excluded the stipulation for the same reasons that it had granted summary judgment on Count III, namely that Judricks presented no evidence that Caterpillar was either aware of the defects or had an obligation to inspect the rods. The court relied on the purchase orders which included Judricks' warranty that the rods would conform to specifications. The court held that Caterpillar did not waive the warranty by its acceptance of the rods because there was no evidence that Caterpillar knew of the defect at the time it accepted the rods. On the contrary, the evidence indicated that Caterpillar was unaware of the defect until the rods were sent out to customers who reported that the rods were causing engine damage. As with Count III, the court held that Judricks had presented no evidence indicating that Caterpillar had an obligation to inspect the rods. Because Judricks presented no evidence that Caterpillar either found or should have found the defects, Caterpillar's opportunity to inspect was irrelevant to the issues arising from the defects. Accordingly, the stipulated testimony was not relevant to the issue of whether the defects substantially impaired the value of the contract. That decision is supported by the record, and does not constitute an abuse of discretion. Id.
 
 
 15
 For the above reasons, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 A connecting rod attaches the piston to the crankshaft in an engine, and can be either straight or serrated
 
 
 [2]
 The term "torqued" refers to the tightening of the bolts that connect the cap and the rod to a specified tightness. Dist. Ct. Op. at 26
 
 
 [3]
 The jury instructions at issue defined the concepts of offer and acceptance as follows:
 Instruction 5: A contract is made by an offer and acceptance. No contract is complete without the mutual assent of the parties.
 Rejection of an offer to contract leaves the matter as if no offer had been made, and the party rejecting the offer cannot afterwards revive it by tendering acceptance of the offer.
 After such a rejection, a contract can be made only by a new offer to contract and acceptance.
 Instruction 6: When I use the word "offer," I mean an expression of willingness by one party to enter into an agreement which invites the acceptance by the person or persons to whom it is directed. An offer must be communicated by words or conduct to the other party.
 Instruction 7: When I use the word "acceptance," I mean that Plaintiff Judricks did one of the following:
 (1) Communicated its acceptance to Defendant Caterpillar; or
 (2) Performed the acts that the offer specified.
 If the offer specified a particular type of acceptance, the acceptance must conform with the requirements of the offer.
 
 
 [4]
 Similarly, Judricks now objects to the classification of the parties as offeror or offeree in Instruction 7. That objection was never presented to the district court and is waived as well