**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles W. BRUNTY,**
**Defendant-Appellant.**

**No. 81–6000.**

United States Court of Appeals,
Eleventh Circuit.

April 4, 1983.

---

A. Thomas Mihok, Dempsey & Slaughter, Orlando, Fla., for defendant-appellant.

Robert A. Leventhal, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before VANCE and ANDERSON, Circuit Judges, and SCOTT *, District Judge.

CHARLES R. SCOTT, District Judge:

Appellant, Charles W. Brunty, was convicted of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846, and of distribution of approximately 530 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1). On appeal, Brunty contends

---

* Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, sitting by designation.

1. Robert Malley was employed as a United States Customs Patrol Officer prior to his arrest. Malley pled guilty to the conspiracy charge.

that the trial court's voir dire examination of prospective jurors was inadequate, and that venue in the Middle District of Florida as to the distribution count was improper. For the reasons set forth below we find both contentions lacking in merit and accordingly affirm.

Brunty's conspiracy and distribution convictions arose out of his attempt to sell a large quantity of marijuana to Rick Look, an undercover agent with the Florida Department of Law Enforcement. The transaction between Brunty and Look was arranged by a co-conspirator named Robert Malley.[1] Look, who was posing as a buyer from Detroit, Michigan, agreed to purchase 500 pounds of marijuana from Brunty at a price of $250 per pound.

Look and Brunty first met on the night of April 7, 1981 at the Mousetrap Lounge in Cocoa Beach, Florida. Also present were Malley and an informant named Peter Myers. At that time the transaction was discussed. Brunty told Look that it was a two or three hour drive to where the marijuana was located. It was agreed that Look would accompany Brunty to obtain the marijuana on the following day.

At about 12:00 o'clock Noon on April 8, 1981, Look, driving a Cadillac with $125,000 proposed purchase money in the trunk, another undercover agent, Mike Morris, driving a van,[2] and Brunty, driving a Ford Pinto, met in the parking lot of the Denny's restaurant in Merritt Island, Florida.[3] Pursuant to Brunty's request, Look opened his trunk and showed Brunty the $125,000, contained in a brown paper sack.

---

2. Morris, an agent with Orlando Police Department, was assigned to the Federal Drug Enforcement Administration Task Force in Orlando during this period. The van was an undercover vehicle owned by the Florida Department of Law Enforcement.

3. Cocoa Beach and Merritt Island are in Brevard County, in the Middle District of Florida.

The three thereafter proceeded south, Brunty and Look in Brunty's Pinto[4] with Morris following in the van. Upon arriving at the Denny's restaurant in Delray Beach, Florida, at about 3:15 P.M., they met two others, Jeffery Arnold and Hubert Yonn, who were also charged in the conspiracy.[5] Brunty, Arnold, Look and Morris then rode in the van following Yonn to a mini-warehouse in Boca Raton, Florida[6] where the marijuana was stored. Several bales of marijuana were loaded into the van. The party then returned to Delray Beach, Yonn taking Brunty and Arnold in his car with Look and Morris following in the marijuana-laden van. At Delray Beach they stopped at a Woolco department store, next to the Denny's restaurant where Brunty had left his Pinto, and bought some blankets which were used to cover the marijuana in the van. From there Brunty arranged that he would drive Look back to Merritt Island in the Pinto, with Morris following alone in the van. On the way back, Brunty pulled into a gas station and Morris followed. Brunty gassed up the van and paid for the gas.

The two vehicles arrived back at the Denny's in Merritt Island at about 8:00 o'clock that evening. Brunty then accompanied Look to Look's car hoping to get the purchase money. Instead, he got arrested.

### Voir Dire

Appellant contends that the trial court's restrictions on voir dire questioning of prospective jurors deprived him of his Sixth Amendment right to be tried by an impartial jury. Prior to trial, Brunty moved the court to permit counsel to conduct voir dire, or alternatively, to have the court propound a list of specific questions to the prospective jurors. The asserted purpose of the motion was to discover bias against persons charged with drug-related crimes for purposes of challenges for cause and effective use of peremptory challenges. The trial court denied Brunty's motion but agreed to ask 34 of the 204 questions Brunty submitted. Brunty requested that 73 of the proffered questions be heard by each juror in isolation. The court asked only three of these, but not to isolated veniremen.

■ Rule 24(a) of the Federal Rules of Criminal Procedure vests in the trial court broad discretion to determine the appropriate method and scope of voir dire. This discretion extends to the decision whether to propound questions proffered by counsel, *United States v. Holman,* 680 F.2d 1340, 1345 (11th Cir.1982); *United States v. Brooks,* 670 F.2d 148, 152 (11th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2943, 73 L.Ed.2d 1339 (1982); *United States v. Magana-Arevalo,* 639 F.2d 226, 228 (5th Cir. 1981), and whether jurors should be questioned collectively or individually. *United States v. Colacurcio,* 659 F.2d 684, 689 (5th Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1635, 71 L.Ed.2d 869 (1982); *United States v. Hawkins,* 658 F.2d 279, 283 (5th Cir.1981); *United States v. Delval,* 600 F.2d 1098, 1102 (5th Cir.1979). An abuse of discretion will not be found if the method of voir dire adopted by the trial court is capable of giving reasonable assurance that prejudice would be discovered if present. *United States v. Brooks, supra; United States v. Hawkins, supra; United States v. Delval, supra.*

■ An examination of the record reveals that the district court did not abuse its discretion. The questions propounded by the court adequately covered those matters

---

4. Along the way, Brunty spoke to Look about his close personal and business relationship with Malley and stated that Malley was to receive a commission for arranging the deal. Brunty also claimed to have smuggled loads of marijuana from Colombia for three years by using fishing boats.

5. Arnold was Brunty's co-defendant at trial. "Huey" Yonn is currently a fugitive.

6. Delray Beach and Boca Raton are in Palm Beach County, in the Southern District of Florida.

which the defendant had a legitimate interest in bringing out, and were clearly sufficient to assure that prejudice against the defendant due to his being charged with narcotics violations would be uncovered.[7] *See United States v. Rojas,* 537 F.2d 216, 219 (5th Cir.1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *United States v. Eastwood,* 489 F.2d 818, 819–20 (5th Cir.1973). We note that many of the defendant's proposed questions, particularly among those he wanted to have asked *in camera,* were plainly aimed at determining—and perhaps influencing—the views of jurors on the propriety of the marijuana laws.[8] A defendant is not entitled to a sympathetic jury; merely an impartial one. *See generally* 2 Wright, Federal Practice and Procedure: Criminal 2d § 381. Since jurors are not at liberty to disregard the law in arriving at their verdict, a trial judge owes no obligation to a defendant to inquire into whether jurors agree with the law.[9] Essential fairness was satisfied in this case by the district court's careful though general questions pertaining to the possibility of bias against the accused due to the nature of the charges. *United States v. Rojas, supra; United States v. Eastwood, supra.*

We also hold that the district court did not abuse its discretion in declining to question the jurors in isolation. Such a procedure is not required in cases involving unsupported general allegations of prejudicial information. *See United States v. Colacurcio,* 659 F.2d at 689; *United States v. Hawkins,* 658 F.2d at 283–85; *United States v. Gerald,* 624 F.2d 1291, 1297 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981).[10]

7. Indeed, the court's questioning into possible bias due to the nature of the charges prompted seven jurors to indicate that they would or could possibly be prejudiced. All seven were then summarily excused. Appellant's claim that there may have been others is sheer speculation which this court need not entertain.

It is also worth noting that with respect to one juror whose son had been charged with a drug offense earlier, Brunty's counsel opposed the government's request that the juror be questioned further, stating that the juror "said he could follow the instructions of the court and did so under oath, and he could do it impartially" (Record, vol. II, p. 106). The questions propounded to that juror were substantially identical to the inquiry made of all the other jurors.

8. Some examples were:
 139. Would you be willing to turn a relative, such as your child, over to the police if you discovered if he or she was using marijuana?
 \* \* \* \* \* \*
 144. In your own words, how do you feel about drugs? Drug users? People who make a living distributing drugs?
 \* \* \* \* \* \*
 162. Would you approve of your children drinking alcoholic beverages but not approve of their smoking marijuana?
 \* \* \* \* \* \*
 169. Do you see any similarity between marijuana being illegal and the days of prohibition?

9. Brunty's counsel has candidly admitted, in arguments before the trial court and on appeal, that his purpose was to uncover "deep-seated prejudices" of prospective jurors against "the use of marijuana" and "drug offenses". (Record, vol. II, p. 7; Reply Brief, p. 1). We feel this use of the word "prejudice" is merely a euphemism for saying that prospective jurors might support the laws which prohibit such activities. While a defendant is entitled to discover whether the charges against him would prevent a juror from giving him a fair trial, he is not entitled to learn whether the juror agrees with the laws upon which those charges are based.

10. Appellant also challenges the district court's denial of his motion to strike the remaining jurors on the panel, or alternatively to direct specific questions to each, because they were present when the court dismissed the seven prospective jurors referred to in note 7, *supra,* and had heard certain remarks made by those dismissed jurors concerning their possible prejudice. The record shows that three jurors mentioned relationships they had with children, and one juror stated that his son returned from Viet Nam in "pretty bad shape". (Record, vol. II, p. 89–91). However, each of these remarks was extremely brief and unspecific, the trial judge having immediately cut off any juror who attempted a detailed explanation. We cannot say under the circumstances that the district court abused its discretion in declining to strike the remaining jurors or to voir dire them specifically about the remarks of the dismissed jurors. What minimal statements the remain-

## Venue

■ Appellant contends that his conviction for distribution of marijuana should be reversed because the Middle District of Florida lacked proper venue. At the close of the government's case-in-chief,[11] Brunty moved for a judgment of acquittal [12] on the contention that the distribution occurred in the Southern District of Florida, not in the Middle District as charged. It was undisputed that the actual physical transfer of marijuana into Agent Morris's van occurred in Palm Beach County, in the Southern District of Florida. The district court, nonetheless, denied Brunty's motion, holding that the jury could reasonably conclude that Brunty's distribution was a continuing offense, part of which occurred in Brevard County, in the Middle District of Florida, and that Brunty retained constructive possession of the marijuana pending receipt of payment in the Middle District.[13]

The right of a criminal defendant to be tried in the state and district in which the crime was committed is guaranteed by Article III of and the Sixth Amendment to the United States Constitution and Rule 18 of the Federal Rules of Criminal Procedure. This right, however, is qualified under 18 U.S.C. § 3237(a), which provides that an offense "begun in one district and completed in another, or committed in more than one district, may be ... prosecuted in any district in which such offense was begun, continued, or completed."

Appellant urges us to hold that his distribution was not a continuing offense. To this end he asks that we narrowly construe the term "distribution" in 21 U.S.C. § 841(a) to mean nothing more or less than "the transfer of possession", and in particular that we distinguish "distribution" from "sale". Brunty alleges that he fully relinquished possession of the marijuana in Boca Raton, in the Southern District of Florida, notwithstanding the fact that he was not to receive payment until he had driven Agent Look back to the Denny's in Merritt Island, in the Middle District of Florida. Appellant contends that while such acts might properly be considered part of a "sale", they should not be viewed as part of a "distribution."

Appellant's proposed narrow construction of "distribution" is without basis. Section 841(a) was enacted as part of the Comprehensive Drug Abuse Prevention & Control Act of 1970. 21 U.S.C. § 801 et seq. The Act defines "distribute" to mean "deliver", and "deliver" to mean "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship". 21 U.S.C. § 802(8) and (11). Conspicuously, the operative term "transfer" is nowhere qualified or limited, by the phrase "of possession" or otherwise. This omission no doubt was purposeful, since the legislative history of the statute clearly reveals that Congress intended "distribution" to contemplate "sale". 1970 U.S.

---

ing jurors heard can hardly be considered spectacular or inflamatory, *compare United States v. Gibbons,* 607 F.2d 1320, 1330–31 (10th Cir. 1979), and had no connection with the defendant or the case being tried. Brunty's counsel did not request a specific cautionary instruction. We feel that the trial court's general questioning and jury instructions were reasonably sufficient to discover or eradicate any resulting prejudice.

**11.** The government does not challenge the timeliness of appellant's venue objection.

**12.** Although referred to in cases as a motion for "judgment of acquittal", *e.g., United States v. White,* 611 F.2d 531, 534 (5th Cir.), *cert. denied,* 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849

(1980), if such a motion were granted solely due to improper venue, the government would not be prevented from retrying the case in a proper district. *See United States v. Stratton,* 649 F.2d 1066, 1076–79, 1083 (5th Cir.1981).

**13.** We observe *sua sponte* that the district court erred, to the defendant's advantage, in failing to instruct the jury that the government need only establish proper venue by a preponderance of evidence, not by proof beyond a reasonable doubt. *United States v. Wuagneux,* 683 F.2d 1343, 1356–57 (11th Cir.1982); *United States v. Rivamonte,* 666 F.2d 515, 517 (11th Cir.1982).

Code Cong. & Ad.News 4566, 4574–76. See *also* 21 U.S.C. § 841(b)(4).[14]

■ Cases involving distribution under § 841(a) support a broad construction of the offense. The Fifth Circuit has acknowledged that "distribution" is broader in scope than the predecessor offense of "sale", *United States v. Workopich*, 479 F.2d 1142, 1147 n. 6 (5th Cir.1973),[15] and has stated that the crime is defined broadly enough "to include acts which perhaps traditionally would have been defined as mere aiding and abetting." *United States v. Oquendo*, 505 F.2d 1307, 1310 n. 1 (5th Cir. 1975). More generally, the distribution provision has been held to criminalize "participation in the transaction viewed as a whole." *United States v. Pruitt*, 487 F.2d 1241, 1245 (8th Cir.1973); *United States v. Wigley*, 627 F.2d 224, 226 (10th Cir.1980). Such participation may consist of or include the transfer of actual possession, *e.g., United States v. Pool*, 660 F.2d 547, 561 (5th Cir.1981), or the transfer of constructive possession. *E.g., United States v. Ramos*, 666 F.2d 469, 475–76 (11th Cir.1982); *United States v. Felts*, 497 F.2d 80, 82 (5th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974). However, distribution may also consist of or include other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price. *See United States v. Ramos*, 666 F.2d at 475–76; *United States v. Wigley*, 627 F.2d at 225–26; *United States v. Witt*, 618 F.2d 283, 284–85 (5th Cir.), *cert. denied*, 449 U.S. 882, 101 S.Ct. 234, 66

L.Ed.2d 107 (1980); *United States v. Chester*, 537 F.2d 173 (5th Cir.1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1120, 51 L.Ed.2d 548 (1977); *United States v. Oquendo*, 505 F.2d at 1309–10; *United States v. Felts*, 497 F.2d at 82; *cf. United States v. Davis*, 564 F.2d 840, 844–45 (9th Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978); *see also United States v. Wilson*, 657 F.2d 755, 761–62 (5th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982).[16]

■ The evidence in this case, viewed in the light most favorable to the government, unquestionably supports the finding of a continuous sales transaction between Brunty as seller and Agent Look as buyer and that Brunty performed acts in furtherance of that sale in the Middle District of Florida both prior and subsequent to his acts in the Southern District of Florida. Brunty's prior participation included discussing and making arrangements for the delivery and sale, inspecting the proposed purchase money, and departing from Merritt Island for the purpose of retrieving the marijuana. Brunty's participation after leaving the Southern District of Florida included his efforts to collect the purchase money. These acts comfortably support the charge that Brunty distributed the marijuana in the Middle District of Florida. *See United States v. Ramos, supra; United States v. Oquendo, supra; United States v. Felts, supra; United States v. Chester, supra.*

Appellant argues that because he could have been convicted of distribution in the Southern District of Florida for the acts he

---

**14.** Section 841(b)(4), Title 21, provides that any person who violates § 841(a) "by distributing a small amount of marijuana *for no remuneration*" shall be treated and sentenced under 21 U.S.C. § 844, as if his offense were merely simple possession. (Emphasis added). By implication, one who distributes the same amount of marijuana *for remuneration* does not fall within this exception, and accordingly is sentenced as a distributor under the more severe provisions of 21 U.S.C. § 841(b)(1)(B).

**15.** See also *Kitchen v. United States*, 532 F.2d 445 (5th Cir.1976) (habeas venue challenge to conviction for distribution in violation of § 841(a), rejected where "there is ample proof that the drugs were *sold* in the [district where the defendant was tried]" (emphasis added)), and *United States v. Felts*, 497 F.2d 80, 82 (5th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974) (§ 841(a) distribution conviction affirmed following *United States v. Spence*, 425 F.2d 1079 (5th Cir.1970), which involved predecessor offense of "sale").

**16.** Although in *United States v. Jackson*, 526 F.2d 1236 (5th Cir.1976), it was asserted that "possession is an element in the substantive charge of either distribution or sale", 526 F.2d at 1238, this language is obiter dicta since the only question before the court was whether the evidence supported the appellant's conviction of aiding and abetting possession with intent to distribute. While possession will undoubtedly be present in most instances of distribution, neither the statutory language nor the cases involving distribution support the proposition that a showing of possession is required. *See United States v. Stevens*, 521 F.2d 334, 337 n. 2 (6th Cir.1975) ("[T]he distribution charge can conceivably be proved without proof of possession.") In any case, our concern here is merely over venue. We hold that even assuming Brunty fully relinquished possession of the marijuana in the Southern District of Florida, if his participation in the entire sales transaction included acts performed in the Middle District of Florida, then venue was proper in either district.

performed there, his crime must be viewed as completed prior to his return to the Middle District. However, as we have emphasized, the relevant test is not whether distribution was committed in the Southern District, but whether the transaction viewed as a whole was completed in the Southern District. Because the evidence shows that Brunty expected payment upon his return to Merritt Island, it was proper for the jury to view Brunty's offense as continuing into the Middle District of Florida.[17] Our conclusion is reinforced by a line of cases involving importation of narcotics, in violation of 21 U.S.C. § 952(a), which hold that although the crime is committed the moment the narcotics enter the United States, it continues and is not completed until the narcotics reach their point of destination, and consequently venue lies in any district along the way. *United States v. Phillips,* 664 F.2d 971, 1031 (5th Cir.1981), *cert. denied sub nom., Platshorn v. United States,* —— U.S. ——, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *United States v. Gray,* 626 F.2d 494, 497–98 (5th Cir.1980), *cert. denied,* 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981), and *sub nom., Wright v. United States,* 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), *Barker v. United States,* 450 U.S. 919, 101 S.Ct. 1367, 67 L.Ed.2d 346 (1981); *United States v. Godwin,* 546 F.2d 145 (5th Cir.1977); *United States v. Jackson,* 482 F.2d 1167 (10th Cir. 1973), *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974).

 Additionally, we reject appellant's claim that the jury could not reasonably have found that he retained constructive possession over the marijuana during the return drive to Merritt Island, which possession he did not intend to relinquish until he received payment. Constructive possession may be shown by ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed. *United States v. Davis,* 679 F.2d 845, 852–53 (11th Cir.1982); *United States v. Marszalkowski,* 669 F.2d 655, 662 (11th Cir.1982); *United States v. Glasgow,* 658 F.2d 1036, 1043 (5th Cir.1981). Constructive possession may be. shared with others. *United States v. Davis,* 679 F.2d at 853; *United States v. Ramos,* 666 F.2d at 476. The record shows not only that Brunty had "ownership" of the marijuana (in the sense that had the sale been lawful, he could have maintained an action for the contract price), but that Brunty intended, and took steps, to retain control over the marijuana and Agent Morris's van until receiving payment.[18] Accordingly, even viewing "distribution" as "a transfer of possession", the evidence supports a finding that Brunty's release of constructive possession was not to occur until receipt of payment, in the Middle District of Florida. On this theory, the fact that Brunty was arrested before payment was completed is of no consequence, since an "attempted transfer" satisfies the offense. 21 U.S.C. § 802(8); *see United States v. Tamargo,* 672 F.2d 887, 890–91 (11th Cir.1982).

For the foregoing reasons, the appellant's convictions on both counts are

AFFIRMED.

---

**17.** Brunty's argument, of course, also ignores his participation in the distribution in the Middle District of Florida *prior* to his acts in the Southern District of Florida.

**18.** Aside from issuing numerous instructions to Agents Look and Morris, Brunty's efforts arguably in furtherance of retaining control of the marijuana until collecting payment include his inspecting the purchase money before departing, his keeping close watch on Look while in the Woolco department store, his arrangements to have Look ride back with him in the Pinto rather than in the van with Morris, his buying gas for the van, his keeping the van within sight during the drive, and his accompanying Look back to Look's car upon returning to Merritt Island.

Whether actual drug purchasers might have been less cooperative with Brunty is immaterial in our view. By the same token, it is of no legal significance that Look and Morris were in fact government agents. *See United States v. Boney,* 572 F.2d 397, 402 (2d Cir.1978).