**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Agustin ORTEGA, Defendant–Appellant.**

**No. 94–1803.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 13, 1994.

Decided Jan. 4, 1995.

Suggestion for Rehearing En Banc Denied Jan. 27, 1995.

Lance C. Malina (argued), Barry Rand Elden, Asst. U.S. Attys., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee U.S.

John A. Meyer (argued), Chicago, IL, for defendant-appellant Agustin Ortega.

Before POSNER, Chief Judge, and BAUER and FLAUM, Circuit Judges.

POSNER, Chief Judge.

 The defendant, Agustin Ortega, was sentenced to 63 months in prison following his conviction by a jury of aiding and abetting the possession of heroin with intent to distribute it. He had also been charged with conspiracy to distribute heroin but that charge was dismissed after the jury hung on it. There was no inconsistency in the jury's verdict, since while a conspirator is almost always also an aider and abettor, *United States v. Corral–Ibarra*, 25 F.3d 430, 435 (7th Cir.1994), an aider and abettor is often not a conspirator. *United States v. Carson*, 9 F.3d 576, 586 (7th Cir.1993); *United States v. Zafiro*, 945 F.2d 881, 884 (7th Cir.1991), aff'd, —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. Galiffa*, 734 F.2d 306, 311 (7th Cir.1984). You can assist an enterprise and want it to succeed without being a party to the agreement under which the enterprise was created or is being operated.

The charges against Ortega arose out of a deal that Jesus Villasenor and Mario Gomez (who was Ortega's nephew) made to sell heroin to a pair of individuals who, unbeknownst

to them, were an FBI agent and an FBI informant. The deal was struck at a restaurant and afterward the parties repaired to Villasenor's van, which was parked outside. Ortega was sitting in the van, behind the driver's seat. Villasenor went to the rear of the van and poked around, looking for something. Then he asked (in Spanish, as was the entire conversation among the parties), "Where is it?," and Ortega pointed to an area on the floor of the van and said, "Over there." Villasenor went to the place indicated and came up with a plastic bag, which he opened. The informant tasted it, and pronounced it heroin. The bag emitted a pungent odor and Ortega remarked—depending on the translation—either, "The damn aroma comes from that thing," or, "It still fuckin' smells like that's what it is." There was also testimony that after the informant declared the substance in the bag to be heroin, Ortega commented, "the best."

The evidence was not sufficient to convict Ortega of possession of heroin beyond a reasonable doubt. Possession, including constructive possession, implies a right—not necessarily a legal right, but a right recognized by the relevant community, which may be an illegal community—to control. *United States v. Windom*, 19 F.3d 1190, 1200 (7th Cir.1994); *United States v. Manzella*, 791 F.2d 1263, 1266 (7th Cir.1986). There is a sense in which, when Ortega was alone in the van with the heroin, he had "control" over it. He could have picked up the bag of heroin and run. But the power to make off with someone else's property is not equivalent to a *right* to the property. There is no evidence that the heroin was Ortega's in that sense. The heroin was Villasenor's. It is no answer that if only Ortega knew where it was, only Ortega could possess it. You can be the only person to know where something is, yet not own the thing; it may be inaccessible to you, and even if accessible may be the rightful possession of another. We doubt very much whether by the usages and customs of the heroin trade Ortega could have played finders keepers with Villasenor and expected to live to tell about it. Cf. *United States v. Bafia*, 949 F.2d 1465, 1469 (7th Cir.1991); *United States v. Terzado–Madruga*, 897 F.2d 1099, 1105 (11th Cir.1990).

■ But if Ortega did not possess the heroin, Villasenor did; and the question then becomes whether Ortega aided· and abetted Villasenor's possession. 18 U.S.C. § 2(a). If the evidence that Ortega said "the best" is credited, the answer is clearly yes. The canonical definition of aiding and abetting a federal offense, stated by Judge Learned Hand in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938), and repeated in innumerable subsequent cases, e.g., *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769–70, 93 L.Ed. 919 (1949); *United ed States v. Pino–Perez*, 870 F.2d 1230, 1235 (7th Cir.1989) (en banc); *United States v. Ruiz*, 932 F.2d 1174, 1180 (7th Cir.1991), requires not only that the defendant have aided his principal to commit a crime but also that he have wanted the principal to succeed in committing it. Obviously this rules out inadvertent assistance, *Fagan v. Washington*, 942 F.2d 1155, 1159 (7th Cir.1991), but it also—and plausibly when we consider that the aider and abettor can be punished as severely as the principal, 18 U.S.C. § 2(a); U.S.S.G. § 2X1.1; *United States v. Mokol*, 957 F.2d 1410, 1419 (7th Cir.1992)—rules out cases in which the defendant was a mere accomplice after the fact, who did not assist the principal to commit the crime and therefore could not have been supposed to be acting out of a desire that the crime be committed. At argument the government's lawyer disputed this, contending that every accomplice is an aider and abettor, but he offered no support for this proposition, which is contrary to the definitions both of aider and abettor and of accomplice after the fact, 18 U.S.C. § 3; *United States v. Lepanto*, 817 F.2d 1463, 1467 (10th Cir.1987); *United States v. Wilkins*, 659 F.2d 769, 773 (7th Cir.1981), which has been rejected repeatedly, e.g., *Bollenbach v. United States*, 326 U.S. 607, 611, 66 S.Ct. 402, 404, 90 L.Ed. 350 (1946); *United States v. Pino–Perez, supra*, 870 F.2d at 1236; *United States v. Innie*, 7 F.3d 840, 852 (9th Cir.1993), and which is too harsh a position given the heavy punishment of aiders and abettors.

■ If Ortega pronounced the heroin "the best," this makes him an aider and abettor. He was speaking to a customer and warranting the quality of the seller's product. He was assisting the sale in circumstances that made clear that he wanted it to succeed. But the evidence that Ortega, rather than

the informant or the FBI agent, said "the best" is so weak that we hesitate to base our decision on the assumption that he did say it. If he did not, he still assisted the sale by pointing to the bag of heroin, and he did so knowingly. His remarks (quite apart from "the best") showed that he knew the bag contained heroin, as his reply brief concedes; and he must also have known—or so at least a reasonable jury could have found—that Villasenor wanted the heroin in order to make a sale.

Even so, if the evidence that Ortega said "the best" is discounted there is no evidence that he wanted the sale to succeed. He might have pointed to the bag because Villasenor asked him where it was and he knew, not because he wanted Villasenor to succeed in selling the heroin in it. The jury, recall, could not agree on a verdict on the conspiracy charge. Presumably it failed because there was very little evidence that Ortega, who happened to be an uncle of Gomez, Villasenor's partner in the sale of the heroin, was a member of the Villasenor–Gomez conspiracy. One of the alternative possibilities is that he was someone along for the ride who rendered one-time assistance by watching over the heroin (the van's door was broken, and as a result could not be locked, and there had been a previous theft) while Villasenor and Gomez were in the restaurant negotiating with the FBI agent and the informant. If we knew that Ortega was to be paid, as corrupt policemen are paid to look the other way when a drug deal is about to come off, it would be plain enough that he wanted the deal to succeed, as that would greatly enhance the probability of his actually being paid; and all the elements of the traditional test for aiding and abetting would then be satisfied. Likewise as we have said if he joined actively in the selling by talking up the quality of the product, showing that he wanted the sale to go through.

But what if he merely rendered assistance, without being compensated or otherwise identifying with the goals of the principal? We do not think it should make a difference, provided the assistance is deliberate and material. One who, knowing the criminal nature of another's act, deliberately renders what he knows to be active aid in the carrying out of the act is, we think, an aider

and abettor even if there is no evidence that he wants the act to succeed—even if he is acting in a spirit of mischief. The law rarely has regard for underlying motives. *Peoni*'s formula for aiding and abetting, if read literally, implies that the defendant must to be convicted have some actual desire for his principal to succeed. But in the actual administration of the law it has always been enough that the defendant, knowing what the principal was trying to do, rendered assistance that he believed would (whether or not he cared that it would) make the principal's success more likely—in other words did what he could do or what he was asked to do to help make success more likely. See *United States v. Zafiro, supra,* 945 F.2d at 887–88; *United States v. Blankenship,* 970 F.2d 283, 287 (7th Cir.1992). No more is required to make the defendant guilty of joining the principal's venture and adopting its aims for his own within the meaning of *Peoni* and the cases that follow it.

AFFIRMED.