In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 15-2243

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY BROWN,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 405-4 — **Ronald A. Guzmán**, *Judge.*

---

ARGUED APRIL 4, 2016 — DECIDED DECEMBER 14, 2016

---

Before EASTERBROOK and HAMILTON, *Circuit Judges*, and
PEPPER, *District Judge.*[*]

HAMILTON, *Circuit Judge.* Appellant Anthony Brown pled
guilty to conspiring to distribute drugs. He appeals his sen-
tence, challenging the application of a two-level Sentencing

---

[*] Hon. Pamela Pepper of the Eastern District of Wisconsin, sitting by
designation.

Guideline enhancement for obstruction of justice. The unu-
sual process that led to this enhancement persuades us that
we should remand. The judge who sentenced Brown imposed
the enhancement based on Brown's responses to three ques-
tions in testimony in a hearing on a motion to suppress in an-
other case against another defendant and before another
judge. The other defendant ultimately pled guilty and with-
drew his motion to suppress. As a result, the judge who actu-
ally heard Brown's testimony never made findings about the
honesty of his testimony or the merits of the other defendant's
motion to suppress. The judge who sentenced Brown im-
posed the enhancement for obstruction of justice based on the
other judge's interim impressions about earlier testimony
from police officers. That was not a sufficient factual founda-
tion to support the obstruction of justice enhancement. We va-
cate Brown's sentence and remand for resentencing.

I. *Facts and Procedural Background*

Anthony Brown was arrested for selling heroin in a hand-
to-hand drug transaction on Chicago's west side. He offered
to assist the police, telling the officers that he knew where a
man named "Jimmie" stored large amounts of drugs and that
he was supposed to meet Jimmie later that day. Brown gave a
description of Jimmie but did not provide his last name.
Brown rode with police officers in an unmarked police car to
Jimmie's stash house. Brown then placed a monitored but un-
recorded call from the police car using his personal cell
phone. When a person matching the description given by
Brown emerged from the house, police stopped him. They
found eight baggies with approximately 1000 capsules con-
taining 135 grams of heroin. The police later identified him as
Jimmie Sessom.

Sessom was charged with possessing 100 grams or more of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). His case was assigned to Chief Judge Castillo. Sessom moved to suppress the search and seizure of heroin. At an evidentiary hearing on the motion to suppress before Judge Castillo, Chicago police officers and an FBI agent testified about the information Brown had given them and Sessom's stop and arrest. After hearing the testimony, Judge Castillo told the attorneys he was inclined to deny Sessom's motion to suppress, and he shared with the attorneys his "preliminary conclusions" to the effect that he found credible the police testimony about the information that Brown provided. Judge Castillo made no definitive ruling, however, and left open the possibility of hearing further evidence.

Sessom later moved to reopen the suppression hearing to call Brown to testify. Since Brown's own criminal case was still pending, the parties in Sessom's case expected Brown to assert his Fifth Amendment privilege not to incriminate himself. Sessom proposed to the court that Brown be asked just four questions that he argued would not invade Brown's Fifth Amendment privilege. The questions were provided in briefs to the court and to all parties. Judge Castillo granted the motion, reopened the suppression hearing, and ordered Brown to answer over his Fifth Amendment objection.

The questioning was conducted by Sessom's counsel:

Q: Mr. Brown, on the evening of July 11, 2012 at approximately 7:45, were you in a car with a Chicago Police Department officer around Taylor and North Avenue in Chicago?

A: You said Taylor and North Avenue?

Q: Yes.

A: No.

Q: On the evening of July 11th, 2012 at approximately 7:45, did you identify an individual walking out of an apartment building at 1239 North Taylor Avenue –

A: No.

Q. – as someone you knew as Jimmie?

A: No.

Q: On the evening of July 11th, 2012 at approximately 7:45, did you place a phone call from a CPD officer's car to someone named Jimmie?

A: No.

Q: Do you recall what your phone number was in July 2012?

A: I can't remember.

After that hearing, Sessom pled guilty and withdrew his motion to suppress. As a result, Judge Castillo never ruled on the motion to suppress and did not make any findings on the credibility of Brown's answers.

Brown then pled guilty to the conspiracy charge against him. Judge Guzmán sentenced Brown. The government argued that Brown had obstructed justice by lying in his answers to those questions in Sessom's suppression hearing. Judge Guzmán then determined that Brown's "no" answers in the suppression hearing reflected Brown's version of the events and found that his version of events was not credible.

Judge Guzmán then "agreed with" Judge Castillo's preliminary view that the officers who testified at Sessom's suppression hearing were credible.

Judge Guzmán was "convinced that [Brown's] failure to accurately testify constitutes an obstruction of justice." He found that the failure to testify accurately was intentional and imposed the two-level guideline increase for obstruction of justice under U.S.S.G. § 3C1.1. The enhancement made the total offense level 27. With criminal history Category III, the guideline range became 87 to 108 months. Judge Guzmán imposed a sentence of 60 months, below both the actual guideline range and the range of 70 to 87 months that would have applied without the obstruction enhancement.

On appeal Brown argues that Judge Guzmán did not make appropriate findings to support application of the enhancement for obstruction of justice. In our view, while Judge Guzmán made the findings required for the enhancement, he did not have a sufficient factual basis for doing so since he based those findings primarily on the interim impressions Judge Castillo announced before he had even heard Brown's testimony. We wonder whether a remand is likely to benefit Brown, especially in light of the below-guideline sentence and the continued credit for acceptance of responsibility (which is unusual but permissible when an obstruction enhancement applies). Still, we cannot say on this record that the error was harmless, so we remand for re-sentencing.

II. *Analysis*

Judge Guzmán found that Brown committed perjury by providing the three "no" answers in Sessom's suppression hearing. We review the district court's factual findings for

clear error. *United States v. DeLeon*, 603 F.3d 397, 402 (7th Cir. 2010), citing *United States v. Powell*, 576 F.3d 482, 498 (7th Cir. 2009). Those "factual findings will stand as long as they are plausible in light of the record in its entirety." *Id.* (internal quotation marks and citation omitted). We review *de novo* whether the factual findings of the district court adequately support the imposition of the enhancement. See *id.*, citing *United States v. Anderson*, 580 F.3d 639, 648 (7th Cir. 2009).

When applying a § 3C1.1 enhancement for obstruction of justice based on perjury, "the district court should indicate that it has found all of the elements of perjury: falsity, willfulness and materiality." *United States v. Turner*, 203 F.3d 1010, 1020 (7th Cir. 2000), quoting *United States v. Brimley*, 148 F.3d 819, 823 (7th Cir. 1998). In such cases, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same.…" *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). The district court "must also find that a defendant testified untruthfully with the specific intent to obstruct justice rather than as a result of confusion, mistake or faulty memory." *United States v. Gage*, 183 F.3d 711, 715 (7th Cir. 1999), citing *Dunnigan*, 507 U.S. at 94, and *United States v. Ewing*, 129 F.3d 430, 434 (7th Cir. 1997) ("Section 3C1.1 requires specific intent to obstruct justice."). The prosecution bears the burden "to prove by a preponderance of the evidence that the enhancement is warranted." *Ewing*, 129 F.3d at 434, citing *United States v. Hamm*, 13 F.3d 1126, 1129–30 (7th Cir. 1994).

We first address a legal issue about whether § 3C1.1 could apply to Brown's testimony in Sessom's suppression hearing. Section 3C1.1 provides:

> If (1) defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase by 2 levels.

Could perjury by Brown in the Sessom suppression hearing meet the requirements of § 3C1.1? We agree with the district court that it could, at least with sufficient factual findings. The second clause allows the enhancement to be applied for perjury or other obstruction regarding a "closely related offense." We find no error in the district court's decision to treat Brown's testimony in the Sessom suppression hearing as "related to … a closely related offense," even though the two men were not charged jointly. See *United States v. Messino*, 382 F.3d 704, 708 (7th Cir. 2004) (affirming enhancement where defendant testified falsely during trial of co-defendants); accord, *United States v. Mollner*, 643 F.3d 713, 718 (10th Cir. 2011); *United States v. Savoca*, 596 F.3d 154, 158 (2d Cir. 2010).

The first clause in § 3C1.1 requires that the perjury or other obstruction have been "with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." The "instant offense of conviction" for Brown was conspiracy to possess heroin with intent to distribute it. A conspiracy requires a co-conspirator, of course, and when Brown wanted to cooperate, Sessom was the distributor he gave up to the police. It is not unreasonable to treat perjury in a prosecution of such a potential co-conspirator as obstruction "with respect to the investigation, prosecution, or sentencing" of Brown's own

offense of conviction. The close parsing of the precise word-
ing of the Guideline provides another reminder, however,
about why a sentencing judge may not want to tie a final sen-
tence too closely to such narrow guideline issues as the pre-
cise scope of § 3C1.1 that may have only a tenuous relation-
ship to the goals of sentencing under 18 U.S.C. § 3553(a). Per-
haps the district judge here took that approach (keep in mind
that the sentence was below the guideline ranges both with
and without the obstruction enhancement), but he did not sig-
nal clearly that he was doing so. In any event, there was no
legal obstacle to the obstruction enhancement here.

There was a factual obstacle, though. The district court
made the required findings, but did so without an adequate
basis in the evidence for finding willfulness and falsity. The
combination of relying on testimony before another judge and
the "no" answers to quite specific and multi-part questions
undermined the usual grounds that would support those
findings. Recall the three key questions:

Q: Mr. Brown, on the evening of July 11, 2012 at ap-
proximately 7:45, were you in a car with a Chicago
Police Department officer around Taylor and North
Avenue in Chicago?

Q: On the evening of July 11th, 2012 at approximately
7:45, did you identify an individual walking out of
an apartment building at 1239 North Taylor Avenue
… as someone you knew as Jimmie?

Q: On the evening of July 11th, 2012 at approximately
7:45, did you place a phone call from a CPD officer's
car to someone named Jimmie?

Brown answered each one "no." Each question included multiple factual elements. Because of concerns about his Fifth Amendment privilege, there was no follow-up. We recognize that Brown may have had a strong incentive to lie about the help he had given the police that led to Sessom's arrest and prosecution. But if Brown was mistaken or confused about just one element of the multi-part questions, his answers of "no" could have been honest or at least not deliberately perjurious. For example, there is evidence that Brown had not known the address to which he was directing the officers, but knew only how to get to the house. If he was mistaken about the date or time or the cross-streets, a "no" answer could have been honest or at least not willfully false. These questions and answers, without clarification, were too ambiguous to warrant a determination that Brown gave willfully false answers.

Neither Brown's attorney nor any other counsel was permitted to inquire further as to what parts of the questions prompted the "no" answers. "The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston v. United States*, 409 U.S. 352, 360 (1973) (discussing federal perjury statute, 18 U.S.C. § 1621). That did not occur in this case, for understandable reasons. The Second Circuit has said that when a line of questioning "is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction." *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986); see also *United States v. Landau*, 737 F. Supp. 778, 784–85 (S.D.N.Y. 1990) (granting motion to dismiss perjury indictment because questions were ambiguous). Here the ambiguity stemmed from the combination of multiple factual elements in each question and the lack of follow-up. Accordingly, Judge Guzmán could not rely on

Brown's "no" answers in the Sessom suppression hearing to determine Brown's "version of events."

At Brown's sentencing hearing, Judge Guzmán said:

> On this record I find *his version* now of what occurred to be just not credible. It's not credible. The testimony by the officer, I agree with Judge Castillo, was credible, was believable. That's the way things happen. That's the way it's done.

When Brown's counsel noted the limited nature of the examination in the Sessom suppression hearing and suggested that the responses to the four government questions were not sufficient to find obstruction, the court responded:

> You don't think it's clear from this record that the officers' testimony was that your client was with him in the car, pointed out the apartment, and pointed out the defendant when he came out, and that he denied that when he testified?

After Brown's counsel expressed further concern that the testimony was very limited in scope and that counsel was not able to cross-examine to clarify his testimony to bolster his credibility, the court said that Brown's motive was:

> not a great mystery. I have many defendants who come here, plead guilty, but still have one foot in their other life. These are his relationships. These are the people he did business with. These are the people who he fears. All of these reasons would be cause for him to back off and lie. It would be cause for him not to … want to admit in open court in front of his peers, the people he was doing business with, the people

he depended upon, and the people he feared,
what he actually did against them. That hap-
pens all the time. I don't find that unusual.

The court later said:

I am convinced that his failure to accurately tes-
tify constitutes an obstruction of justice. I think
it was intentional. I think it directly contradicted
the version of events as they actually occurred.
It was under oath. And I find that the two-level
increase for obstruction of justice is appropriate
in this case. As a result of that I find that the ap-
propriate adjusted total offense level in this case
is 27.…

On this record, we cannot agree. We assume that Judge
Guzmán could have relied on more definitive findings by
Judge Castillo that Brown had lied deliberately. We also as-
sume that Judge Guzmán could have made his own findings
if Brown's answers had been less ambiguous. But the fact that
Judge Castillo never made findings in the Sessom hearing and
never made findings about Brown's credibility means that
Judge Castillo's initial impressions about the hearing could
not be relied on in Brown's case to support an enhancement
for perjury. We recognize that Brown may well have been ly-
ing before Judge Castillo, but the very specific questions and
terse "no" answers in the transcript did not provide a "Brown
version" of events that Judge Guzmán could rely upon to find
perjury.

Brown's sentence is VACATED and the case is
REMANDED for re-sentencing.