In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2296

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANGELA ARMENTA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 CR 33-5 — **Thomas M. Durkin**, *Judge.*

ARGUED JANUARY 9, 2018 — DECIDED MARCH 5, 2018

Before FLAUM, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* The government charged Angela Ar-
menta with health care fraud, but at her trial it failed to ask
any of its witnesses to identify her in court. Nevertheless, the
jury convicted Armenta. At her sentencing, the district court
increased Armenta's Guidelines range by two levels after it
concluded she had obstructed justice. It then sentenced her to
a term of imprisonment well below that increased range. She
appeals her conviction and sentence.

Because the evidence of Armenta's identity was sufficient to support her conviction and because the district court appropriately applied the obstruction of justice enhancement, we affirm.

## I. BACKGROUND

Angela Armenta worked at Passages Hospice—a company that provided nurses for hospice care at nursing homes and other facilities throughout Illinois—first as a certified nursing assistant and later as a regional director of certified nursing assistants. Passages billed its services to Medicare, which in turn reimbursed Passages at different rates depending on the level of care a patient received. For example, Medicare would pay approximately $180 per patient per day for routine services, but would pay as much as $700 per patient per day for general inpatient services (GIP). In 2009, Passages began paying bonuses to directors based on the number of patients on GIP per day per pay period. The number of patients on GIP significantly increased after the bonus structure was implemented, in part because directors like Armenta were instructing nurses and nursing assistants to place patients on GIP who did not need that level of care.

In August 2009, Passages received an audit request for patient files from a Medicare contractor. In response to the audit, Armenta and several other Passages employees met to enter information consistent with GIP care and billing into patient files. For example, they created records that visits had occurred when they had not. Passages submitted the altered files to the contractor.

In 2010, a legal nurse consultant trained Passages employees, including Armenta, on the proper requirements for placing a patient on GIP. After the legal nurse left, Armenta told the other nurses present to disregard the training. Just a month later, Armenta attended a teleconference with an outside consultant who reiterated the proper requirements for GIP. Still, Passages's GIP procedures and bonus structure did not change.

Eventually, Armenta and a number of other Passages employees were charged with health care fraud. Armenta was the only defendant to proceed to trial. At the close of the government's case-in-chief, Armenta filed a motion for a judgment of acquittal because none of the government's witnesses identified her in court. The district court reserved ruling on the motion until the close of the defense's case. Armenta then testified, the defense rested, and the district court denied the motion for a judgment of acquittal. The court reasoned that all the facts and circumstances were sufficient to establish Armenta's identity.

The jury found Armenta guilty of three counts of health care fraud. At sentencing, the district court increased Armenta's Guidelines range two levels after it found that she had obstructed justice by lying on the stand when she testified and by altering records during the Medicare audit at Passages. With that two-level enhancement, her Guidelines imprisonment range was 63 to 78 months. The district court sentenced Armenta to 20 months' imprisonment, imposed two years' supervised release, and ordered her to pay $1.67 million in restitution. She appeals the district court's denial of her motion for a judgment of acquittal and its calculation of her Guidelines range.

## II. ANALYSIS

Armenta challenges her conviction, arguing that the evidence was insufficient to support a finding that she was the Angela Armenta to whom the government's indictment and evidence referred.

She also challenges her sentence, arguing that the district court erred in imposing the two-level enhancement for obstruction of justice.

*A. The evidence was sufficient to establish Armenta's identity.*

We review the denial of a defendant's motion for a judgment of acquittal *de novo*, but the standard is "in essence the same as a review of the sufficiency of the evidence." *United States v. Johns*, 686 F.3d 438, 446 (7th Cir. 2012). We ask whether a rational jury "could have found the essential elements of a crime beyond a reasonable doubt," at the time the motion was brought, viewing the evidence in the light most favorable to the government. *United States v. Clarke*, 801 F.3d 824, 827 (7th Cir. 2015) (quoting *United States v. Foley*, 740 F.3d 1079, 1082–83 (7th Cir. 2014)); *see also United States v. Wilson*, 879 F.3d 795, 802 (7th Cir. 2018); *Johns*, 686 F.3d at 446.

Though an in-court identification of the defendant is preferred to prove identity—for reasons this appeal illustrates—one "is not required if the defendant's identity can be inferred from the circumstances." *United States v. Thomas*, 763 F.3d 689, 693 (7th Cir. 2014). "[T]he defendant's identity is nothing more or less than an element that must be established beyond a reasonable doubt." *Id.* at 694.

Even in the absence of an in-court identification of Armenta, a rational jury could conclude from all the facts and

circumstances that the government proved her identity beyond a reasonable doubt.

Armenta had the same name as the person who was indicted and was referred to by witnesses and in documents submitted into evidence. *See United States v. Doherty*, 867 F.2d 47, 67 (1st Cir. 1989) (finding the evidence of identity sufficient when, in part, the defendant had the same name and nickname "as the person indicted and about whom the witnesses spoke"). Witnesses testified about their familiarity with "Angela Armenta," and not one of them suggested that the person they were talking about was not in the courtroom. *See United States v. Weed*, 689 F.2d 752, 755 (7th Cir. 1982) (noting "that the failure of any of the witnesses to point out that the wrong man had been brought to trial [can be] eloquent and sufficient proof of identity"). And the jury was presented with several stipulations between the government and "defendant Angela Armenta," most notably a stipulation where Armenta agreed the government's exhibit was "a true and accurate portion of a résumé that Angela Armenta provided to prospective employers." (R. 173 at 146–47.) That exhibit indicated that Angela Armenta was employed at Passages from 2008 to 2012, including as "Regional CNA Director," (*id.* at 148), which corroborated witness testimony as well as remarks made by Armenta's counsel during his opening statement, (*see, e.g.,* R. 222 at 10–12).

These remarks, along with others by Armenta's counsel during opening statement, made clear that the Angela Armenta that witnesses would testify about was the same one in

the courtroom.[1] Moreover, her counsel "did not present any argument to the jury that might have caused it to question" his client's identity as the defendant, *Thomas*, 763 F.3d at 695, and he did not object to any witness's testimony on the basis that they had not identified his client, *Weed*, 689 F.2d at 756. *See Thomas*, 763 F.3d at 694 (noting that "the jury had no cause to doubt that the right man was on trial" given "his lawyer's trial strategy, which was inconsistent with an identity-based defense"). The defense was free to argue to the jury that the Angela Armenta in the courtroom was not the same Angela Armenta involved in the fraudulent scheme. *Id.* It did not do so, and the jury rationally concluded that the evidence established her identity beyond a reasonable doubt notwithstanding the lack of an in-court identification.

## B. *The obstruction of justice enhancement was appropriate.*

We review *de novo* whether a defendant satisfies the requirements of the obstruction of justice enhancement, but we review the district court's factual findings for clear error. *United States v. Nichols*, 847 F.3d 851 (7th Cir. 2017). The district court concluded that Armenta obstructed justice by (1) changing and creating documents during the Medicare audit, and (2) committing perjury when she testified in her own defense. Armenta raises two challenges to this enhancement.

She first contends that the district court violated her Fifth and Sixth Amendment rights when it increased her Guidelines range based on facts that were not found by the jury. Her challenge is one to the district court's well-accepted ability to

---

[1] For a sampling of the relevant portions from her counsel's opening statement, see the district court's oral ruling on Armenta's motion for a judgment of acquittal. (R. 222 at 9–11.)

make factual findings under the Sentencing Guidelines without the aid of a jury or the defendant's consent. Though defendants certainly have a right for any fact that increases a statutory minimum or maximum to be submitted to a jury and proved beyond a reasonable doubt, *see Alleyne v. United States*, 570 U.S. 99 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000), "[w]e have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *United States v. Booker*, 543 U.S. 220, 233 (2005) (citation omitted). "For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Id.*; *see also, e.g., United States v. Warren*, 454 F.3d 752, 762–63 (7th Cir. 2006) (finding no error in the district court making the necessary factual findings to support an obstruction of justice enhancement).

Here, the district court found that Armenta obstructed justice and increased her Guidelines range—but not her mandatory minimum or maximum sentence—accordingly. It thus did not violate the Fifth and Sixth Amendments.

Apart from the alleged constitutional violation, Armenta also contends the district court erred in finding that she obstructed justice by perjuring herself. It's true that the district court did not find the requisite elements to impose the enhancement based on perjury, *see United States v. Brown*, 843 F.3d 738, 742 (7th Cir. 2016), but the district court had a second, independent basis for imposing the enhancement: Armenta's alteration and creation of patient files. We agree that this conduct constitutes obstruction of justice. *See* U.S.S.G. § 3C1.1 cmt. nn.3–4. The enhancement was undoubtedly proper on this basis alone.

### III. CONCLUSION

Even without an in-court identification of Angela Armenta, the jury convicted her of health care fraud, rationally concluding from all the facts and circumstances that the government had proved her identity beyond a reasonable doubt.

At Armenta's sentencing, the district court considered the evidence presented at trial that Armenta altered and created patient files and appropriately imposed a two-level enhancement for obstruction of justice.

For these reasons, the district court's judgment is AFFIRMED.