**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 5, 2018
Decided July 20, 2018

*Before*

DIANE P. WOOD, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-2993

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br> *v.* <br><br> KARL L. MCKENZIE, SR., <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Western District of Wisconsin. <br><br> No. 3:17-cr-00013-jdp-1 <br><br> James D. Peterson, <br> *Chief Judge*. |

**O R D E R**

Karl McKenzie gave an associate a locked box filled with nearly two pounds of methamphetamine. McKenzie, however, had the associate's key. Contending that the associate never "possessed" the drugs, McKenzie argues on appeal that he was erroneously convicted of "distributing" those drugs in violation of 21 U.S.C. § 841(a)(1). The district judge denied his motion for acquittal and declined to instruct the jury that "distribution" requires the recipient to "possess" the drugs. We affirm.

The parties agree on the relevant facts presented to the jury. McKenzie schemed with a partner, Timothy Vaillancourt, to obtain methamphetamine for distribution from

a supplier. McKenzie and Vaillancourt had worked together on previous methamphetamine deals. By February 2017, however, when this deal occurred, Vaillancourt was working as a confidential informant gathering evidence against McKenzie.

The deal began as planned. McKenzie met the supplier and returned to Ashland, Wisconsin, to hand off the drugs to Vaillancourt. They met in their respective vehicles in a parking lot outside of town. Before driving into town, McKenzie fretted that his Florida vehicle plates might make it more likely that police would pull him over. He gave the drugs to Vaillancourt—who had Wisconsin plates—in a locked box. The pair had used this box to transfer drugs and money between themselves before. In fact, Vaillancourt explained at trial that McKenzie had previously lost his key to the box and so Vaillancourt lent McKenzie his key, which McKenzie never returned. When Vaillancourt received the box, he expected that it contained drugs. He asked McKenzie if "it" was in the box; McKenzie said it was.

The scheme ended after McKenzie and Vaillancourt left the parking lot. They drove off in separate cars, intending to weigh out the drugs at a clothing store McKenzie owned. When they arrived, law enforcement was waiting to arrest McKenzie and seize the drugs. Vaillancourt thought he had a key to the lockbox, and discussed opening the box with the arresting officers. But they did not find a key on Vaillancourt; instead, an officer checked McKenzie's key ring and found the key to the box there.

McKenzie was charged with one count of distributing over 500 kilograms of methamphetamine in violation of 21 U.S.C. § 841(a)(1). At his jury trial, his defense was that he did not "distribute" drugs to Vaillancourt. He used this syllogism: With no key to the lockbox, Vaillancourt could not get the drugs; if Vaillancourt could not get to them, he never "possessed" them; and if Vaillancourt never possessed them, McKenzie never "distributed" them to him. The district judge denied counsel's motion for a directed verdict of acquittal based on this theory. *See* FED. R. CRIM. P. 29. The judge also declined to instruct the jury on the defense's theory of the necessity of "possession." The judge further ruled that defense counsel could not argue about the meaning of "distribute" in closing. The jury returned a guilty verdict.

On appeal, McKenzie challenges the denial of his motion for acquittal, insisting that he cannot be guilty of "distributing" a controlled substance because that crime requires the transfer of possession of the drugs to the recipient. In the alternative, he argues that he is entitled to a new trial because the judge improperly refused to define

or give instructions regarding "possession" to the jury, to instruct the jury on his theory of the defense, or to allow him to argue that theory in closing.

We review both issues *de novo*. *United States v. Armenta*, 883 F.3d 1005, 1008 (7th Cir. 2018); *United States v. Jackson*, 598 F.3d 340, 345 (7th Cir. 2010). McKenzie's success on appeal depends on two propositions: first, that a "distribution" requires the recipient to take "possession" of the drugs; and second, that the jury did not hear sufficient evidence that Vaillancourt possessed the drugs. Both propositions fail.

A recipient's "possession"—meaning "physical custody" or "dominion and control," *United States v. Adams*, 625 F.3d 371, 383 (7th Cir. 2010)—is not a requirement of "distribution." The Controlled Substances Act penalizes defendants who "manufacture, distribute, or dispense … a controlled substance." 21 U.S.C. § 841(a)(1). The general definition provision of the Act, *id.* § 802, explains that to distribute is "to deliver … a controlled substance or a listed chemical." *Id.* § 802(11). The term "deliver" is defined in the Act as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." *Id.* § 802(8). But the term "transfer" is not defined, let alone defined as requiring "transfer of possession."

A "transfer" may include transfers of interests in property less than "possession." Black's Law Dictionary defines "transfer" to include "every method—direct or indirect, absolute or conditional, voluntary or involuntary—of disposing of or parting with property or with an interest in property." *Transfer*, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added). This definition covers McKenzie's conduct. By giving Vaillancourt the box and getting in another car, he disposed of and parted with the drugs.

Moreover, the definition of "deliver" is broader than completed transfers; it also includes attempted or constructive transfers. 21 U.S.C. § 802(8). As the government points out, this definition focuses on what the distributor has done—endeavoring to expand control over the drugs to others—not on whether the intended recipient actually acquired control. Applying that definition, some courts have concluded that a "distribution" can occur even if the transaction is interrupted before the drugs change hands. *See United States v. Tobin*, 676 F.3d 1264, 1289 (11th Cir. 2012), *abrogation on other grounds recognized by United States v. Castro*, 736 F.3d 1308, 1313 (11th Cir. 2013) (holding that evidence of drugs' shipment without proof of delivery sufficed to sustain a § 841(a)(1) conviction); *United States v. Brunty*, 701 F.2d 1375, 1381–82 (11th Cir. 1983)

(concluding that distribution occurred in charging district even though drugs were transferred in neighboring judicial district); *United States v. Oropeza*, 564 F.2d 316, 322 (9th Cir. 1977) (deciding that intercepted transaction was "distribution" because "attempted transfer constitutes … a delivery"). Here, even if the distribution was not to be completed until McKenzie and Vaillancourt arrived at the store, it still was chargeable as a delivery because it was an "attempted" transfer under § 802(8).

McKenzie replies that we should read "attempted transfer" out of the Act's definition of "deliver." He observes that an "attempt to distribute" is criminalized by 21 U.S.C. § 846, the general "attempt" statute, yet he was charged with "distribution" under § 841, not "attempted distribution" under § 846. His argument might have some traction if the two statutes conflicted, but McKenzie does not argue that they have different meanings. The plain text of the statute governs, and it defines "distribution" as "delivery" and "delivery" as "attempted transfer." Accordingly, the text of the Act defeats McKenzie's argument.

The two cases that McKenzie cites—*United States v. Bailey*, 510 F.3d 726, 735 (7th Cir. 2007) and *United States v. Johnson*, 127 F.3d 625, 628 (7th Cir. 1997)—do not heighten the definition of "distribution." In both cases we used the phrase "transfer of possession" to typify "distribution" under § 841(a)(1), but in neither case did we hold that "transfer of possession" is a requirement of "distribution." Indeed, neither *Bailey* nor *Johnson* addressed whether the recipient *had* to take possession. They instead decided only whether sufficient evidence showed that the named defendant had been involved in a drug sale. These cases therefore do not control the meaning of the terms "distribute," "deliver," or "transfer." *See Bailey*, 510 F.3d at 735–36; *Johnson*, 127 F.3d at 628. McKenzie's reliance on the jury instructions is similarly misplaced. Those instructions did not define "distribution" as *requiring* a "transfer of possession." They merely stated that a defendant may distribute drugs if he "delivers … the controlled substance" *or* "transfers possession of the controlled substance." *See* Pattern Criminal Jury Instructions of the Seventh Circuit 640 (2012 ed.) (revised Feb. 2013).

That brings us to the second proposition. Although we have concluded that a conviction under § 841(a)(1) does not require "possession" of the drugs by the intended recipient, the jury could reasonably have found that Vaillancourt *did* take possession. At this stage we must view the evidence in the light most favorable to the government. *See United States v. Fouse*, 578 F.3d 643, 649 (7th Cir. 2009). McKenzie argues that the evidence suggests that Vaillancourt was bound by their past practice to take the drugs to McKenzie's store and await his permission to take a share of them. Viewing the

evidence in the light most favorable to the government, however, it supports a finding that McKenzie expected Vaillancourt to have access to the drugs in the box. Vaillancourt testified that the lockbox key McKenzie held was originally *his* key; he simply gave it to McKenzie because McKenzie had lost his own. In fact, Vaillancourt apparently had forgotten that he gave McKenzie his key and, when law enforcement seized the box, he believed that he still had it. No evidence shows that Vaillancourt was *prohibited* from accessing the drugs. A reasonable jury could find that Vaillancourt had "dominion" over the drugs, *Adams*, 625 F.3d at 383, and could have opened the lockbox to access them but for the temporary separation from his key.

McKenzie relies on three cases in arguing that Vaillancourt did not possess the drugs, but they are inapposite. In *United States v. Kitchen*, 57 F.3d 516 (7th Cir. 1995), we held that a defendant who briefly held drugs to inspect them had not possessed them because he had not assented to the transaction. The evidence in this case suggests the opposite: Vaillancourt had assented to take the drugs, he just needed to weigh them for his and McKenzie's mutual protection (lest their supplier later feel short-changed). In *United States v. Manzella*, 791 F.2d 1263 (7th Cir. 1986), we held that a drug broker had not possessed drugs with which he had no actual contact. Vaillancourt was a far cry from a physically removed broker. He was a mid-tier distributor with the drugs in his car. In *United States v. Ortega*, 44 F.3d 505 (7th Cir. 1995), we noted that possession "implies a right … recognized by the relevant community, which may be an illegal community … to control." *Id.* at 507. The facts here support a finding that Vaillancourt—whose only separation from the drugs sitting in his car was the happenstance of having previously lent his key to his associate—had such a right. *Accord United States v. Lawrence*, 788 F.3d 234, 240 (7th Cir. 2015) ("Not only can possession be actual or constructive it can also be exclusive or joint."). The district court therefore properly denied McKenzie's motion for a judgment of acquittal.

Finally, McKenzie was not entitled to instruct the jury of his theory of the defense—that "possession" was required—because that instruction would have misstated the law, for reasons we have explained. *See United States v. Prude*, 489 F.3d 873, 882 (7th Cir. 2007). As such, we will not disturb the judgment.

AFFIRMED